1 | CHET A. KRONENBERG (SBN: 222335)
ckronenberg@stblaw.com
2 | ERICA SEDLER (SBN: 272250)
esedler@stblaw.com
3 | DYLAN MEIER (SBN: 334939)
dylan.meier@stblaw.com
4 | BENJAMIN A. MALINGS (SBN: 346831)
benjamin.malings@stblaw.com
5 | SIMPSON THACHER & BARTLETT LLP
1999 Avenue of the Stars, 29th Floor
6 | Los Angeles, California 90067
Telephone: (310) 407-7500
7 | Facsimile: (310) 407-7502

8 | *Attorneys for Defendants The Charter Oak*
*Fire Insurance Company and The Travelers*
9 | *Property Casualty Company of America*

10 | **UNITED STATES DISTRICT COURT**

11 | **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12 |

| | |
|---|---|
| SURFACE WAREHOUSE, LP, | Case No.: 2:25-cv-03895 MRA (MAAx) |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** |
| vs. | |
| THE CHARTER OAK FIRE INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; AMERICAN ECONOMY INSURANCE COMPANY; WEST AMERICAN INSURANCE COMPANY; AMERICAN STATES INSURANCE COMPANY; THE OHIO CASUALTY INSURANCE COMPANY; AND DOES 1-50. | Judge: Hon. Mónica Ramírez Almadani Magistrate Judge: Hon. Maria A. Audero |
| | Date:  August 18, 2025 Time:  1:30 p.m. Place:  Courtroom 9B |
| Defendants. | [Filed concurrently herewith: Declaration of Scott Erikson; Declaration of Chet A. Kronenberg; Request for Judicial Notice; and [Proposed] Order] |

- 1 -

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 18, 2025 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9B, located at the U.S. Courthouse, 411 W. Fourth St., Santa Ana, CA 92710, Defendants The Charter Oak Fire Insurance Company and The Travelers Property Casualty Company of America (collectively, "Travelers") will, and hereby do, move for judgment on the pleadings of the above-entitled action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Travelers seeks dismissal of this action because Plaintiff Surface Warehouse, LP ("Plaintiff") has failed to adequately allege facts sufficient to state a claim upon which relief can be granted. This motion is based upon this Notice, the Memorandum of Points and Authorities, the Declaration of Scott Erikson, the Declaration of Chet A. Kronenberg, the Request for Judicial Notice, the Proposed Order, the complete files and records in this action, and any additional material and arguments as may be considered in connection with the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 9, 2025.

Dated:  June 16, 2025

SIMPSON THACHER & BARTLETT LLP

By:   */s/ Chet A. Kronenberg*
Chet A. Kronenberg

*Attorney for Defendants The Charter Oak Fire Insurance Company and The Travelers Property Casualty Company of America*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................1

FACTS ......................................................................................................2

      A.   The Policies..................................................................2

           1.   The Silica Exclusion........................................3

           2.   The Pollution Exclusion ..................................3

      B.   The Underlying Third-Party Lawsuits...........................4

      C.   This Coverage Action ....................................................7

LEGAL STANDARD ................................................................................8

      A.   Judgment on the Pleadings ...........................................8

      B.   Policy Interpretation .....................................................9

ARGUMENT.............................................................................................11

      A.   Plaintiff's First, Second and Third Causes of Action for Declaratory Relief, Breach of Contract, and Anticipatory Breach of Contract Fail to State a Claim.....................................11

           1.   The Silica Exclusion Precludes Coverage for Underlying Lawsuits Under Four of the Eight Travelers Policies......11

           2.   The Pollution Exclusion in All of the Travelers Policies Precludes Coverage for the Underlying Lawsuits............15

           3.   Because Coverage Is Excluded, Plaintiff's Remaining Allegations Regarding Breach of Contract and Anticipatory Breach Fail .................................................20

      B.   Plaintiff's Fourth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Precluded by Plaintiff's Failure to State a Claim for Breach of Contract........21

CONCLUSION...........................................................................................21

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>CASES</u>

3

*24th & Hoffman Investors, LLC v. Northfield Insurance Company,*
    82 Cal. App. 5th 825 (1st Dist. 2022) ............................................................... 10

4

5

*AIU Ins. Co. v. Superior Court,*
    51 Cal. 3d 807 (1990) ......................................................................................... 9

6

*Am. Cas. Co. of Reading, PA v. Miller,*
    159 Cal. App. 4th 501 (4th Dist. 2008) ............................................................ 19

7

8

*American Zurich Insurance Co. v. James N. Gray Co.,*
    2014 U.S. Dist. LEXIS 186560 (C.D. Cal. Jul. 25, 2014) ......................... 14, 17

9

*Belmonte v. Emplrs Ins. Co.,*
    83 Cal. App. 4th 430 (4th Dist. 2000) ......................................................... 10, 11

10

11

*Broome County v. The Travelers Indem. Co.,*
    125 A.D.3d 1241 (N.Y. App. Div. 2015) .......................................................... 17

12

*Century Transit Systems, Inc.,*
    42 Cal. App. 4th 121 (2d Dist. 1996) ............................................................... 12

13

14

*Clarendon Am. Ins. Co. v. Bay Inc.,*
    10 Supp. 2d 736 (S.D. Tex. 1998) .................................................................... 17

15

*Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.,*
    156 Cal. App. 4th 1469 (1st Dist. 2007) .......................................................... 16

16

17

*Davis v. Farmers Ins. Grp.,*
    134 Cal. App. 4th 100 (4th Dist. 2005) ............................................................ 12

18

*Doleman v. Meiji Mut. Life Ins. Co.,*
    727 F.2d 1480 (9th Cir. 1984) ............................................................................ 8

19

20

*Film Allman, LLC v. New York Marine & Gen Ins. Co.,*
    2016 U.S. Dist. LEXIS 170148 (C.D. Cal. Dec. 7, 2016) ................................ 21

21

*Garamendi v. Golden Eagle Ins. Co.,*
    127 Cal. App. 4th 480 (1st Dist. 2005) .................................................. 16, 17, 18

22

23

*Gunderson v. Fire Ins. Exch.,*
    37 Cal. App. 4th 1106 (1st Dist. 1995) ....................................................... 10, 20

24

*Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.,*
    801 F. Supp. 2d 1023 (S.D. Cal. 2011) ............................................................ 20

25

26

*Horace Mann Ins. Co. v. Barbara B.,*
    4 Cal. 4th 1076 (1993) ................................................................................. 10, 11

27

*Islands Rests., LP v. Affiliated FM Ins. Co.,*
    532 F. Supp.3d 948 (S.D. Cal. 2021) ............................................................... 21

28

*Kazi v. State Farm Fire & Casualty Co.,*
    24 Cal. 4th 871 (2001) .......................................................................... 10

*Love v. Fire Ins. Exchange,*
    221 Cal. App. 3d 1136 (4th Dist. 1990) .............................................. 21

*LSH Co. v. Transamerica Life Ins. Co.,*
    2020 U.S. Dist. LEXIS 188588 (C.D. Cal. Sep. 15, 2020) ................... 8

*MacKinnon v. Truck Insurance Exchange,*
    31 Cal. 4th 635 (2003) .................................................................. 15, 16

*Medill v. Westport Ins. Corp.,*
    143 Cal. App. 4th 819 (2d Dist. 2006) ............................................... 12

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.,*
    187 Cal. App. 4th 766 (2d Dist. 2010) ............................................... 21

*Northfield Ins. Co. v. Sandy's Place, LLC,*
    530 F. Supp. 3d 952 (E.D. Cal. 2021) .................................................. 9

*Ocean Towers Hous. Corp. v. Evanston Ins. Co.,*
    772 F. App'x 459 (9th Cir. 2019) ...................................................... 10

*Pittelman v. Pierce,*
    6 Cal. App. 4th 1436 (2d Dist. 1992) ................................................... 9

*Riley v. Fitzgerald,*
    178 Cal. App. 3d 871 (2d Dist. 1986) .................................................. 9

*RLI Ins. Co. v. Gonzalez,*
    411 F. App'x 696 (5th Cir. 2011) ...................................................... 17

*Rosen v. State Farm Gen. Ins. Co.,*
    20 Cal. 4th 1070 (2d Dist. 2003) ...................................................... 10

*Special Dist. Risk Mgmt. Auth. v. Munich Reinsurance Am., Inc.,*
    562 F. Supp. 3d 989 (E.D. Cal. 2021) .................................................. 9

*StreamCast Networks, Inc. v. IBIS LLC,*
    2006 U.S. Dist. LEXIS 97607 (C.D. Cal. May 2, 2006) ..................... 11

*The Villa Los Alamos Homeowners Association. v. State Farm General
    Ins. Co.,*
    198 Cal. App. 4th 522 (1st Dist. 2011) .............................................. 19

*U.S. ex rel. Chunie v. Ringrose,*
    788 F.2d 638 (9th Cir. 1986) ............................................................... 8

*Waller v. Truck Ins. Exchange, Inc.,*
    11 Cal. 4th 1 (1995) .............................................................. 9, 10, 21

*Westoil Terminals Co. v. Indus. Indem. Co.,*
    110 Cal. App. 4th 139 (2d Dist. 2003) .......................................... 10, 11

## **STATUTES**

Cal. Civ. Code § 1636.................................................................................9

Cal. Civ. Code § 1639.................................................................................9

## **RULES**

Federal Rule of Civil Procedure 12(c)........................................................8

TABLE OF AUTHORITIES
No. 2:25-CV-03895 MRA (MAAx)

# **PRELIMINARY STATEMENT**

Plaintiff's[1] insurance coverage claims against Travelers are barred by two unequivocal policy coverage exclusions. Because Plaintiff does not and cannot demonstrate entitlement to coverage, each of Plaintiff's causes of action fails.

Plaintiff is a vertically integrated company that creates, markets, and distributes industrial stone products which include artificial stone slabs fabricated by workers into countertops and which are the subject of third-party complaints against Plaintiff for silica-based bodily injury (the "Underlying Lawsuits). These products are alleged to contain "***extremely high concentrations of crystalline silica (approximately 95%), which produced extremely high levels of respirable crystalline silica***" during the fabrication process. The commercial general liability policies Plaintiff obtained from Travelers expressly exclude the very claims Plaintiff asserts in this action—i.e., coverage for bodily injury arising out of workers' exposure to silica, silica-related dust, and pollutants.

As a threshold matter, California law is well settled that a policy exclusion precludes coverage if it is explicit and unambiguous. Courts have routinely upheld silica and pollution exclusions barring coverage for bodily injury arising out of exposure to silica dust and other toxins, finding that no duty to defend or indemnify exists where the insurer contractually eliminated such risk. Travelers' policies do precisely that here. Four of Travelers' eight policies at issue contain silica exclusions, which bar coverage for bodily injury arising out of any exposure to silica or silica-related dust. All eight policies contain pollution exclusions, which bar coverage for bodily injury arising out of the release of any irritant or contaminant, including chemicals. Each exclusion, thus, eliminates coverage for the claims in the Underlying Lawsuits.

---

[1] Plaintiff does business as US Surfaces. Compl. at 1.

Because coverage for injuries plaintiffs allege in the Underlying Lawsuits is unequivocally precluded by Travelers' silica and pollution exclusions, Plaintiff's causes of action—all of which are predicated on the existence of coverage—cannot survive the pleadings and Travelers is entitled to judgment as a matter of law.

## FACTS

### A.     The Policies

Plaintiff alleges that Travelers issued four primary and four excess follow-form and umbrella commercial liability insurance policies between March 27, 2021 and March 27, 2025.  Compl. ¶¶ 33 to 40 (the "Primary Policies" and "Excess/Umbrella Policies," respectively, and collectively, the "Policies").  The Primary Policies include:

- Policy Y-630-9R389647-COF-21, issued by The Charter Oak Insurance Company ("Charter Oak") for the period of March 27, 2021 to March 27, 2022.  Compl. ¶ 33.
- Policy Y-630-9R389647-COF-22, issued by Charter Oak for the period of March 27, 2022 to March 27, 2023.  Compl. ¶ 35.
- Policy Y-630-9R389647-COF-23, issued by Charter Oak for the period of March 27, 2023 to March 27, 2024.  Compl. ¶ 37.
- Policy Y-630-9R389647-COF-24, issued by Charter Oak for the period of March 27, 2024 to March 27, 2025.  Compl. ¶ 39.

The Excess/Umbrella Policies include:

- Policy CUP-0S079756-21-14, issued by Travelers Property Casualty Company of America ("Travelers Property") for the period of March 27, 2021 to March 27, 2022.  Compl. ¶ 34.
- Policy CUP-0S079756-22-14, issued by Travelers Property for the period of March 27, 2022 to March 27, 2023.  Compl. ¶ 36.
- Policy CUP-0S079756-23-14, issued by Travelers Property for the period of March 27, 2023 to March 27, 2024.  Compl. ¶ 38.

- 2 -

- Policy CUP-0S079756-24-14, issued by Travelers Property for the period of March 27, 2024 to March 27, 2025.  Compl. ¶ 40.

A silica exclusion is contained in two of the Primary Policies (Nos. Y-630-9R389647-COF-23 and Y-630-9R389647-COF-24) and two of the Excess/Umbrella Policies (Nos. CUP-0S079756-23-14 and CUP-0S079756-24-14).  All Policies contain a pollution exclusion.

### 1.    The Silica Exclusion

The silica exclusion bars coverage for bodily injury "arising out of the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of 'silica' or 'silica-related dust.'"  Declaration of Scott Erikson ("Erikson Decl."), Ex. A at p. 137; Ex. B at p. 362; Ex. C at p. 490; and Ex. D at p. 544.  "Silica" is defined as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, ***silica dust*** or silica compounds."  *Id.*  "***Silica-related dust***" is defined as "***a mixture or combination of 'silica' and other dust or particles***."  *Id.*[2]

### 2.    The Pollution Exclusion

The pollution exclusion in the Primary Policies and the excess coverage portion of the Excess/Umbrella Policies[3] excludes coverage for, among other things, bodily injury "arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'":

"(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; . . .

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the 'pollutants' are brought on or to the

---

[2] All emphasis is added unless otherwise noted.

[3] Excess coverage is "subject to the same terms, conditions, agreements, exclusions and definitions" as the Primary Policies.  Erikson Decl. Ex. C at p. 456; Ex. D at p. 510; Ex. G at p. 1012; Ex. H at p. 1065.

premises, site or location in connection with such operations by such insured, contractor, or subcontractor."

Erikson Decl., Ex. A at pp. 103-04; Ex. B at pp. 327-28; Ex. E at pp. 655-56; and Ex. F at pp. 877-878.

The pollution exclusion contained in the umbrella portion of the Excess/Umbrella Policies excludes coverage for bodily injury "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'"  Erikson Decl., Ex. C at p. 464; Ex. D at p. 518; Ex. G at p. 1020; and Ex. H at p. 1073.  The pollution exclusion in the umbrella portion of the Excess/Umbrella policies does not contain the subparts (a) and (d) found in the Primary Policies.

All Policies define the term "Pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."  *Id.*

**B.    The Underlying Third-Party Lawsuits**

Plaintiff alleges that "[s]ince 2022, US Surfaces has been named a defendant in more than 125 lawsuits alleging bodily injuries purportedly resulting from exposure to silica, metals, dusts, and other harmful substances present in products created, marketed, and/or distributed by US Surfaces."  Compl. ¶ 46.  Plaintiff lists the 128 Underlying Lawsuits in Exhibit A to the Complaint.  The core allegations in the Underlying Lawsuits are substantively identical.  Indeed, in the related case, *Hanover American Insurance Company v. Francini, Inc.*, Case No. 2:23-cv-10047-MRA-MAA, 2025 U.S. Dist. LEXIS 70996 (C.D. Cal. Mar. 27, 2025), this Court held that the "underlying state actions are all substantially similar," alleging that "underlying plaintiffs suffer from silicosis and related conditions and consequential injuries because of their exposure to ***silica*** and ***silica-related dust*** while working with the underlying defendants' products."  *Hanover*, 2025 U.S. Dist. LEXIS 70996, at *4.  Further, in another insurance coverage action pending in this Court, *Pacific*

- 4 -

1    *Shore Stones, LLC, et. al. v. Allied Property & Casualty Company, et. al.*, Case No.

2    2:25-cv-04370), plaintiffs allege that the underlying suit entitled *Cesar Manuel*

3    *Gonzalez Quiroz v. American Marble & Onyx Company, Inc., et al.*, Case No.

4    24STCV01477 (Los Angeles Superior Court) ("*Quiroz*") is representative of "most

5    if not all of the other Underlying Lawsuits." Declaration of Chet A. Kronenberg

6    ("Kronenberg Decl."), Ex. 1 ¶ 27. Accordingly, in citing the allegations of the

7    Underlying Lawsuits, Travelers references the allegations in *Quiroz*.

8         The Underlying Lawsuits allege that Plaintiff creates, markets, and distributes

9    artificial stone slabs used to create countertops for residential and commercial

10    customers nationwide. Kronenberg Decl., Ex. 3 ¶ 100 (*Quiroz* Complaint); *see also*

11    Compl. ¶ 4 ("Since 2007, US Surfaces has been in the business of marketing and

12    distributing premium quality, cost-effective building products to both residential and

13    commercial customers. US Surfaces creates, markets, and distributes solid-surface

14    sheets and quartz slabs.") Plaintiff avers that "[t]he plaintiffs in the Underlying

15    Lawsuits allege that they and/or their loved ones were exposed to silica, metals,

16    dusts, and other harmful substances while cutting, grinding, installing, or otherwise

17    working with US Surfaces' products." Compl. ¶ 47. Most of the Underlying

18    Lawsuits are part of, or may become part of, the *Silicosis Cases* petition for civil

19    coordination pending before the Judicial Council of California. (JCCP No. 5378).

20    *See* Kronenberg Decl., Ex. 2.

21         The underlying claimants allege as follows:

22      • Plaintiff "creates, markets and distributes solid-surface sheets and quartz

23        slabs." *Quiroz* Compl. ¶ 1175. Plaintiff "is a vertically integrated company,

24        meaning that no agents or middlemen tack on their costs." *Id*. ¶ 1176.

25      • Plaintiff "imported, manufactured, distributed, supplied and/or sold ***artificial***

26        ***stone products containing approximately 95% crystalline silica that caused***

27        ***or contributed to Plaintiff's silicosis***, pulmonary fibrosis, progressive

28        massive fibrosis, and other injuries." *Id*. ¶ 210.

- Plaintiff's alleged products include "Engineered Stone," "Living Stone," "Quartz," and "Vadara," which the underlying claimants allegedly "cut, drilled, polished, fabricated, and/or installed and to which [they were] injuriously exposed in [their] work as a cutter, fabricator, and installer." *Id.* ¶ 105.

- "[Plaintiff's] product is not a finished consumer product, but is rather an industrial product that ***must*** be fabricated into a countertop before being installed in kitchens and bathrooms as a consumer product, and in the process of fabricating the product, ***respirable crystalline silica dust is generated at air concentrations that cause silicosis***." *Id.* ¶ 1184.

- "Stone slabs or blocks are commercial products that ***require fabrication*** prior to installation for a consumer." *Id.* ¶ 94. "[S]tone slabs typically arrived inside the fabrication shop . . . ." *Id.* ¶ 103. "Cutting, grinding, drilling, chipping, edging, and/or polishing (collectively 'fabricating') stone products produces ***large amounts*** of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic ***silicosis*** as well as lung cancer and various other ***silica***-related diseases." *Id.* ¶ 95.

- The underlying claimants regularly "***inhaled silica-containing dust*** from [Plaintiff's] stone products." *Id.* ¶¶ 108-109.

- "[Plaintiff was] aware that [its] artificial stone products contained ***extremely high concentrations of crystalline silica (approximately 95%), which produced extremely high levels of respirable crystalline silica*** in their ordinary and expected use." *Id.* ¶ 1366.

- "[Plaintiff] owed [claimant] a legal duty to exercise due care in manufacturing, designing, testing, importing, producing, supplying, brokering, contracting, and/or distributing stone products to which [claimant] was exposed in his work as a countertop fabricator and installer." *Id.* ¶ 1282

- 6 -

- "[Plaintiff] negligently and carelessly manufactured, imported, produced, sold, tested, failed to test, supplied, contracted, brokered and/or distributed the stone slab and block products to which [claimant] was exposed in his work as a countertop fabricator and installer."  *Id*. ¶ 1284.

- "Each of [Plaintiff's] stone products contained ***silica***, toxic metals, and other fibrogenic substances, that entered [claimant's] body and were ***substantial factors*** in causing, prolonging, and aggravating his ***silicosis*** and his ***related and consequential injuries***."  *Id*. ¶ 1307.

Plaintiff concedes that one or more of its insurers are currently defending the Underlying Lawsuits under a reservation of rights.  Compl. ¶ 57.

**C.    This Coverage Action**

In its first cause of action, Plaintiff seeks declaratory relief that it is entitled to full coverage for each of the Underlying Lawsuits, including both a defense and indemnity for any settlement or judgment therein, under one or more of the Policies. *Id*. ¶ 66.

In its second cause of action, Plaintiff alleges breach of contract against Travelers for allegedly breaching its duties under the Travelers Policies by (a) asserting that all of the Underlying Lawsuits concern a single "occurrence"; (b) limiting alleged obligations to a single "Each Occurrence Limit" of $1,000,000; (c) invoking Texas law and pro rata allocation principles to demand that Plaintiff contribute to future settlements and judgments in the Underlying Lawsuits; (d) asserting grounds for disputing coverage that Travelers purportedly knows are not supported; (e) allegedly failing to conduct an adequate investigation of Plaintiff's claim for coverage and asserting grounds for disputing coverage based on the allegedly inadequate investigation; (f) allegedly failing to fully inquire into possible bases that might support coverage for the Underlying Lawsuits; (g) allegedly giving greater consideration to its own interests than Plaintiff's interests; and (h) otherwise acting as alleged above. *Id.* ¶ 74.

- 7 -

1    In its third cause of action, Plaintiff alleges anticipatory breach of contract

2    against Travelers for allegedly anticipatorily breaching future indemnity obligations

3    under the Policies. *Id.* ¶ 78, 80.

4    In its fourth cause of action, Plaintiff alleges that Travelers tortiously breached

5    the implied covenant of good faith and fair dealing allegedly by (a) asserting grounds

6    for disputing coverage that Travelers purportedly knows are not supported;

7    (b) failing to conduct an adequate investigation into Plaintiff's claims for coverage

8    and asserting grounds for disputing coverage based on the allegedly inadequate

9    investigation; (c) unreasonably failing and refusing to honor its promises and

10   representations; (d) giving greater consideration to its own interests than Plaintiff's

11   interests; and (e) otherwise acting as alleged above. *Id.* ¶ 86.

12   ## **LEGAL STANDARD**

13   ### **A.    Judgment on the Pleadings**

14   Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough

15   not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ.

16   P. 12(c). "Motions for judgment on the pleadings are functionally identical to Rule

17   12(b)(6) motions." *Hanover*, 2025 U.S. Dist. LEXIS 70996 at *6-7 (internal

18   quotations omitted). "A Rule 12(c) motion may be predicated on either (1) the lack

19   of a cognizable legal theory or (2) insufficient facts to support a cognizable legal

20   claim." *LSH Co. v. Transamerica Life Ins. Co.*, 2020 U.S. Dist. LEXIS 188588, at

21   *15 (C.D. Cal. Sep. 15, 2020). Dismissal on the pleadings of claims is "proper"

22   when the moving party "clearly establishes that no material issue of fact remains to

23   be resolved and [it] is entitled to judgment as a matter of law." *Doleman v. Meiji*

24   *Mut. Life Ins. Co.,* 727 F.2d 1480, 1482 (9th Cir. 1984).

25   While the court must accept the complaint's factual allegations as true, it

26   "need *not* assume the truth of legal conclusions cast in the form of factual

27   allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986);

28   *accord LSH Co.*, 2020 U.S. Dist. LEXIS 188588, at *15 ("[A] court is not bound to

accept as true a legal conclusion couched as a factual allegation.") (internal quotations omitted). "[W]hen ruling on [a motion for judgment on the pleadings], courts must consider the complaint in its entirety, as well as other sources . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Hanover*, 2025 U.S. Dist. LEXIS 70996 at *7 (omission in original) (internal quotations omitted); *accord Special Dist. Risk Mgmt. Auth. v. Munich Reinsurance Am., Inc.*, 562 F. Supp. 3d 989, 994 (E.D. Cal. 2021) (noting that consideration of materials attached to or incorporated by reference in the complaint, or matters of judicial notice, does not convert the motion for judgment on the pleadings into a motion for summary judgment).

## B.    Policy Interpretation

Questions of insurance policy interpretation are governed by state law. *Northfield Ins. Co. v. Sandy's Place, LLC,* 530 F. Supp. 3d 952, 962 (E.D. Cal. 2021). "Under California law, the interpretation of an insurance policy is a question of law to be determined by the court if there is no genuine issue of material fact." *Id*.; *accord Waller v. Truck Ins. Exchange, Inc.,* 11 Cal. 4th 1, 18 (1995).[4]

"Under [California] statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation." *AIU Ins. Co. v. Superior Court,* 51 Cal. 3d 807, 821 (1990); *accord* Cal. Civ. Code, § 1636. "Such intent is to be inferred, if possible, ***solely from the written provisions*** of the contract." *AIU Ins.*, 51 Cal. 3d at 822; *accord* Cal. Civ. Code, § 1639. "Courts will not strain to create an ambiguity where none exists." *Waller,* 11 Cal. 4th at 18-

---

[4] Defendants do not concede that California law applies. Texas law may apply because the policies were issued in Texas. However, there is no material conflict between the laws of California or Texas with respect to the issues addressed in this motion, and thus, "no need . . . to reach the conflict of law issue." *Pittelman v. Pierce*, 6 Cal. App. 4th 1436, 1443 (2d Dist. 1992) (affirming grant of summary judgment to defendants without deciding conflict of law issue); *see also Riley v. Fitzgerald*, 178 Cal. App. 3d 871, 875 (2d Dist. 1986) (finding that conflict of law analysis is necessary only where there is "true conflict of law"). In the event the Complaint survives (it should not), Defendants intend to raise conflict of law issues at the appropriate time.

19; *accord Hanover*, 2025 U.S. Dist. LEXIS 70996 at *8. "[C]overage is precluded when the exclusionary language is explicit." *Belmonte v. Emplrs Ins. Co.*, 83 Cal. App. 4th 430, 435 (4th Dist. 2000); *accord Westoil Terminals Co. v. Indus. Indem. Co.*, 110 Cal. App. 4th 139, 146 (2d Dist. 2003); *Rosen v. State Farm Gen. Ins. Co.,* 30 Cal. 4th 1070, 1074 (2d Dist. 2003) ("If the policy language is clear and explicit, it governs.") Accordingly, "the insured reasonably can expect only the coverage afforded by the plain language of the contract." *Hanover*, 2025 U.S. Dist. LEXIS 70996 at *8 (internal quotations omitted)).

Indeed, an insurer is free to limit the risks it assumes in its contracts. *24th & Hoffman Investors, LLC v. Northfield Insurance Company,* 82 Cal. App. 5th 825, 833 (1st Dist. 2022); *see also Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1118 (1st Dist. 1995) ("An insurance company has the right to limit the coverage of a policy issued by it and the plain language of the limitation must be respected."). "An insurer's duty to indemnify runs to claims that are actually covered, in light of the facts proved. It arises only after liability is established and as a result thereof." *Hanover*, 2025 U.S. Dist. LEXIS 70996 at *8 (internal quotations omitted). The duty to defend entitles an insured to a defense only if the underlying complaint shows that the insured's liability for damages is potentially covered under the policy. *Id.* Notably, the duty to defend is "not unlimited" and instead "measured by the nature and kinds of risks covered by the policy." *Id*. at *9 (internal quotations omitted); *accord Waller*, 11 Cal. 4th at 19; *Horace Mann Ins. Co. v. Barbara B.,* 4 Cal. 4th 1076, 1081 (1993). If the underlying matter involves claims "the policy does not cover, no duty to defend exists." *Kazi v. State Farm Fire & Casualty Co.*, 24 Cal. 4th 871, 880 (2001).

The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the underlying complaints with the terms of the policy. *Ocean Towers Hous. Corp. v. Evanston Ins. Co.,* 772 F. App'x 459, 460 (9th Cir. 2019); *accord Horace Mann Ins.,* 4 Cal. 4th at 1081;

*Hanover*, 2025 U.S. Dist. LEXIS 70996, at *12-14 (comparing the allegations "on the face" of the underlying complaints against the insured with the policy terms). "[W]here an exclusion is clear and unambiguous, it is given its literal effect." *Westoil*, 110 Cal. App. 4th at 146 (internal quotations omitted); *accord Belmonte*, 83 Cal. App. 4th 430 at 435.

## ARGUMENT

**A.    Plaintiff's First, Second and Third Causes of Action for Declaratory Relief, Breach of Contract, and Anticipatory Breach of Contract Fail to State a Claim**

Plaintiff admits that all of the Underlying Lawsuits "alleg[e] bodily injuries purportedly resulting from exposure to *silica*, metals, dusts, and other harmful substances present in products created, marketed, and/or distributed by [Plaintiff]." Compl. ¶ 46. Plaintiff further admits that certain policies contain "silica exclusions" (*id*. ¶ 58), specifically designed to bar the types of claims Plaintiff attempts here. Despite its acknowledgements, Plaintiff contends, without support, that it is nonetheless entitled to full coverage, including a defense and indemnity. However, as detailed below, the silica and pollution exclusions absolve Travelers from any obligation to defend, much less indemnify, Plaintiff.[5]

**1.    The Silica Exclusion Precludes Coverage for Underlying Lawsuits Under Four of the Eight Travelers Policies**

Four of the Policies referenced in the Complaint contain a silica exclusion. Each such exclusion expressly states that insurance coverage does not apply to bodily injury "arising out of the actual, alleged or threatened discharge, dispersal,

---

[5] In addition to the fact that Plaintiff is not entitled to full coverage, Plaintiff's first cause of action for declaratory relief is moot if the Court grants Travelers' motion on the second and third causes of action based on a finding that Defendants owe no duty to defend or indemnify the Underlying Lawsuits based on the silica and pollution exclusions. *See, e.g.*, *StreamCast Networks, Inc. v. IBIS LLC*, 2006 U.S. Dist. LEXIS 97607, at *10-11 (C.D. Cal. May 2, 2006) ("Where determination of [a] breach of contract claim [will] resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate.") (internal quotations omitted).

1    emission, release, escape, handling, contact with, exposure to or inhalation or

2    respiration of 'silica' or 'silica-related dust.'"  Ex. A at p. 137; Ex. B at p. 362; Ex.

3    C at p. 490; and Ex. D at p. 544.  Notably, "Silica-related dust" is defined as "***a***

4    ***mixture or combination of 'silica' and other dust or particles***."  *Id.*

5         The phrase "arising out of" is ordinarily understood to mean "originating

6    from, having its origin in, growing out of, flowing from, incident to, or having

7    connection with."  *Davis v. Farmers Ins. Grp.*, 134 Cal. App. 4th 100, 107 (4th Dist.

8    2005) (internal quotations omitted).  Thus, when used in an exclusion provision, the

9    phrase broadly excludes from coverage claims with "a slight connection" or an

10   "incidental relationship" between the injury and the excluded risk.  *Century Transit*

11   *Systems, Inc.*, 42 Cal. App. 4th 121, 127 n.4 (2d Dist. 1996); *see also Medill v.*

12   *Westport Ins. Corp.*, 143 Cal. App. 4th 819, 830 (2d Dist. 2006) ("arising out of"

13   policy language "broadly links a factual situation with the event creating liability,

14   and connotes only a *minimal* causal connection or incidental relationship").

15        Here, the allegations in the Underlying Lawsuits (*see supra* at pp. 9-11) are

16   not merely incidentally related to Plaintiff's silica-containing products but

17   unmistakably arise from the silica dust emanating from the products during the

18   fabrication process.  As such, the allegations patently demonstrate on their face that

19   the alleged injuries fall squarely within Travelers' silica exclusion.  For example, the

20   underlying claimants repeatedly allege that "[c]utting, grinding, drilling, chipping,

21   edging, and/or polishing (collectively "fabricating") stone products produces ***large***

22   ***amounts*** of respirable crystalline silica dust which stone fabrication workers

23   inhale, typically causing chronic ***silicosis*** as well as lung cancer and various other

24   ***silica-related diseases*."  *Quiroz* Compl. ¶ 95.  The complaints not only allege that

25   the silica dust created in the fabrication of Plaintiff's products caused silicosis and

26   other silica-related injuries, but stress that the products contained "***extremely high***

27   ***concentrations of crystalline silica (approximately 95%)***, ***which produced***

28   ***extremely high levels of respirable crystalline silica***."  *Id.*

- 12 -

1   ¶ 1366.  Indeed, the claimants allege that the products were "a **substantial factor** in

2   bringing about, prolonging, and aggravating [claimants'] silicosis and *related*

3   injuries." *Id*. ¶ 1380.  Because the claimants specifically allege that their injuries

4   arise out of exposure to silica dust, Travelers' silica exclusion precludes Plaintiff's

5   claims under the respective Policies.

6          Unable to escape the clear application of the exclusion and despite its

7   admission that "[t]he plaintiffs in the Underlying Lawsuits allege that they and/or

8   their loved ones were exposed to silica, metals, dusts, and other harmful substances"

9   in Plaintiff's artificial stone products (Compl. ¶ 47), Plaintiff contends that the

10  exclusion does not apply to injuries that were not caused by exposure to silica.

11  *Id.* ¶ 58.  The Complaint, however, does not and cannot articulate how any bodily

12  injury alleged in the Underlying Lawsuits was caused by anything other than silica

13  and is belied by the underlying claimants' voluminous allegations centered on the

14  workers' exposure to silica and resulting silicosis and silica-related diseases.

15         Even if the underlying complaints could be construed to allege a causal link

16  between the claimants' injuries and a non-silica component in Plaintiff's products,

17  the silica exclusion still bars coverage for any bodily injury "arising out" of

18  exposure to "silica" or "silica-related dust" expressly defined by the Policies as "a

19  **mixture or combination of 'silica' and other dust or particles**."  *E.g.,* Erikson

20  Decl., Ex. A at p. 137; Ex. B at p. 362; Ex. C at p. 490; and Ex. D at p. 544.  The

21  underlying claimants define "stone dust" as "**containing silica** and other toxins and

22  carcinogens," and define "artificial stone dust" as "**containing respirable crystalline**

23  **silica** . . . , metals . . . and volatile organic compounds . . . emitted from these

24  products."  *Quiroz* Compl. ¶ 98.  Thus, as alleged, silica is an inseparable

25  component of the stone dust generated in the fabrication process.  Moreover, the

26  underlying complaints call silica a "**substantial factor**" in causing the claimants'

27  "silicosis" and "related and consequential injuries" (*e.g.*, *id.* ¶ 1380) that necessarily

28

"happen[ed] as a result of" claimants' development of silicosis.[6]  Given well-settled law requiring only "a minimal causal connection or incidental relationship" (*Medill*, Cal. App. 4th at 830) and the underlying claimants' focus on silica as a "substantial factor" in causing "silicosis" and "related conditions," Plaintiff's contention does not and cannot plausibly establish coverage.

In fact, the same argument was recently rejected by this Court in *Hanover* where the insureds attempted to rely on *American Zurich Insurance Co. v. James N. Gray Co.*, 2014 U.S. Dist. LEXIS 186460 (C.D. Cal. Jul. 25, 2014), to argue for the non-application of a silica exclusion.  In *American Zurich*, the underlying claimants were Boeing employees who sued the insured, a contractor performing demolition work on Boeing's premises, for injuries sustained from the inhalation of chemical dust released from the construction work.  *Id.* at *2.  The claimants had alleged exposure to "toxic chemical products containing significant concentrations of aromatic solvents, aliphatic solvents, naphthenic solvents, chlorinated solvents, other organic solvents, silica, and other toxic chemicals" from contractor's operations.  *Id.* at *2-3 (internal quotations omitted).  The claimants contended that such exposure "caused occupational diseases and injuries, including Systemic Vasculitis" with one claimant having "died from Systemic Vasculitis and other related and consequential medical conditions."  *Id*. at *3 (internal quotations omitted).  Emphasizing that the claimants had asserted exposure to "***dozens*** of other chemicals" apart from silica, the *American Zurich* court found that a silica exclusion did not bar coverage on such facts.  *Id.* at *18.

As this Court recognized in *Hanover*, the facts of *American Zurich* are distinct from those at issue here.  "Unlike in *American Zurich*, the primary injuries alleged in the underlying state actions are silicosis (which is caused by silica inhalation) and resulting complications from that lung disease."  *Hanover*, 2025

---

[6] *See* "Consequential," *Cambridge Dictionary*,
https://dictionary.cambridge.org/us/dictionary/english/consequential.

U.S. Dist. LEXIS 70996 at *11-12.  Accordingly, "silica is not alleged as merely one of many potential chemicals causing the underlying plaintiffs' injuries, but as the main chemical contributing to their injuries." *Id*. at *11-12.  "Indeed, the whole of each underlying complaint is focused on the dangers of exposure to crystalline silica that working with artificial stone presents; they include long histories on these silica-specific risks, and narratives about . . . underlying defendants' knowledge of these risks and prior cases against them based on silica exposure." *Id*. at *12.

Just as this Court emphasized in *Hanover*, "on the face of the complaints, all allegations against [Plaintiff] specifically address the crystalline silica in [Plaintiff's] artificial stone products." *Id*.; *see also Quiroz* Compl. ¶¶ 1182-1189 (detailing how "in the process of fabricating [Plaintiff's] product, respirable crystalline silica dust is generated at air concentrations that cause silicosis").  "The[] allegations are all focused on the risk of silica exposure, silicosis, and injuries related to silicosis that [Plaintiff's] products allegedly pose." *Hanover*, 2025 U.S. Dist. LEXIS 70996 at *12.  Thus, as the Court held, "the Silica Exclusion applies" and Travelers "do[es] not have a duty to defend [Plaintiff] in the underlying state litigation" and has "no duty to indemnify" it under the applicable Policies. *Id*. at *14.

### 2.    The Pollution Exclusion in All of the Travelers Policies Precludes Coverage for the Underlying Lawsuits

Plaintiff's claims also are barred by the pollution exclusion reflected in all of the Policies at issue.  This court's analysis is governed by the California Supreme Court's interpretation of a pollution exclusion in *MacKinnon v. Truck Insurance Exchange*, 31 Cal. 4th 635 (2003).  The Supreme Court held that the pollution exclusion applies where damage is caused by "irritants" and "contaminants" which are "commonly thought of as pollution." *Id*. at 652.  The court instructed that the application of the exclusion requires consideration of the nature of the pollutant "in conjunction" with the mechanism (i.e., the "discharge, dispersal, release, escape") of exposure. *Id*. at 653.  The court observed that the "common understanding of the

- 15 -

1    word 'pollute' indicates that it is something creating impurity, something

2    objectionable and unwanted." *Id*. at 654 (internal quotations omitted).

3        While the *MacKinnon* court ultimately found on the facts of that case that a

4    landlord's "normal application of pesticides around an apartment building in order

5    to kill yellow jackets would not comport with the common understanding of the

6    word 'pollute'" (*id*. at 654), multiple courts have applied the reasoning of

7    *MacKinnon* to exclude coverage in a wide range of contexts, including claims

8    involving the dissemination of silica dust. *See, e.g.*, *Garamendi v. Golden Eagle*

9    *Ins. Co.*, 127 Cal. App. 4th 480, 483 (1st Dist. 2005) (involving workers' exposure

10   to silica dust arising out of sandblasting operations); *see also Cold Creek Compost,*

11   *Inc. v. State Farm Fire & Cas. Co.*, 156 Cal. App. 4th 1469, 1472 (1st Dist. 2007)

12   (involving the spread of injurious odors from a compost facility).

13       Specifically, in *Garamendi v. Golden Eagle Ins. Co.*, the insured sought

14   coverage for underlying suits where claimants alleged to have suffered bodily

15   injuries "as a result of their exposure to silica and silica dust" arising out of

16   sandblasting operations involving the insured's products. 127 Cal. App. 4th at 483.

17   The insurer had issued a commercial general liability policy to the insured,

18   containing a "Total Pollution Exclusion Endorsement" that excluded coverage for

19   bodily injury "which would not have occurred in whole or in part but for the actual,

20   alleged or threatened discharge, dispersal, seepage, migration, release or escape of

21   pollutants at any time." *Id*. at 484. As here, the policy defined pollutants as "any

22   solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor,

23   soot, fumes, acid, alkalis, chemicals and waste." *Id*.

24       The *Garamendi* court rejected the insured's contention that the pollution

25   exclusion was inapplicable and held that "even if silica is not one of the enumerated

26   items listed in the policy definition of pollutants, that listing is not exclusive and

27   silica dust nonetheless comes within the ***broad*** definition of 'any solid, liquid,

28   gaseous, or thermal irritant or contaminant.'" *Id*. at 485-86. The court explained

1    that "the widespread dissemination of silica dust as an incidental by-product" of

2    sandblasting operations "***most assuredly*** is what is 'commonly thought of as

3    pollution' and 'environmental pollution.'" *Id.* at 486.  The court further instructed

4    that for the pollution exclusion to apply, "there need not be wholesale environmental

5    degradation." *Id.*; *see also American Zurich*, 2014 U.S. Dist. LEXIS 186460 at *13

6    (recognizing that "it is possible that the release of toxins, including silica and dust . .

7    . could be considered traditional pollution") (internal quotations omitted).  Indeed,

8    the *American Zurich* court distinguished the non-excluded injury arising out of

9    exposure to the toxins in that case from the excluded injury arising out of exposure

10   to silica dust such as in *Garamendi* and here.  *See American Zurich*, 2014 U.S. Dist.

11   LEXIS 186460 at *13.  The court held that silica dust like the one in *Garamendi* is

12   "materially different" from the mix of toxins before it because silica dust "travels

13   over a large distance, subjecting many workers in the area to an unreasonable risk of

14   harm." *Id.*

15       Notably, courts in multiple other jurisdictions have also held that silica and

16   silica-containing dust are "pollutants" within the commonly understood meaning of

17   the word in a commercial general liability policy.  *See*, *e.g.*, *Clarendon Am. Ins. Co.

18   v. Bay Inc.*, 10 F. Supp. 2d 736, 742-44 (S.D. Tex. 1998) (finding that "silica is

19   within the ambit of 'pollution'" as used in a pollution exclusion); *RLI Ins. Co. v.

20   Gonzalez*, 411 F. App'x 696, 698 (5th Cir. 2011) ("Silica dust is unambiguously a

21   'pollutant' under the language of the Pollution Exclusion."); *Broome County v. The

22   Travelers Indem. Co.*, 125 A.D.3d 1241, 1242 (N.Y. App. Div. 2015) (finding

23   "silica dust" to be "within the policy definition of a pollutant" as an "irritant or

24   contaminant").

25       The pollution exclusion contained in Travelers Policies, like the pollution

26   exclusion in *Garamendi,* similarly bars coverage for injury "arising out of the actual

27   alleged or threatened discharge, dispersal, seepage, migration, release or escape of

28   pollutants." *See supra* at p.7.  In addition, just like in *Garamendi*, the Policies

- 17 -

1   define the term "pollutants" as any solid, liquid, gaseous or thermal irritant or

2   contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and

3   waste." *Id.*  And, as in *Garamendi*, the underlying claimants allege that their

4   injuries arose out of "the indiscriminate release of toxic and carcinogenic dust" from

5   Plaintiff's products.  *Quiroz* Compl. ¶ 1286; *see also id.* ¶ 115 (alleging injury from

6   inhalation of "silica, metal dust, and other toxins from said products that were

7   generated and released during the intended use of said toxic mineral products").

8       Furthermore, just as the underlying claimants in *Garamendi* alleged that

9   silica-containing dust generated from sandblasting operations "is suspended in air

10  and travels over a large distance, subjecting many workers in the area to an

11  unreasonable risk of harm" (*Garamendi*, 127 Cal. App. 4th at 483), the underlying

12  claimants here allege that their use of Plaintiff's products "resulted in the generation

13  and release of toxic airborne dusts and particulates" (*Quiroz* Compl. ¶ 114) in "***large***

14  ***amounts***" (*id.* ¶ 95) and "***extremely high concentrations***" (*id.* ¶ 1366).

15  Additionally, the underlying claimants allege that workers who are engaged in

16  fabricating artificial stone products require the same protections "like that typically

17  used by sandblasters" (i.e., the workers at issue in *Garamendi*) because the risk of

18  harm is identical: "Given the extremely high concentration of crystalline silica in the

19  product . . . and the consequent extremely high concentrations of respirable silica

20  dust generated by fabrication processes, the highest level of respiratory protection is

21  necessary to use the product safely . . . ." *Id.* ¶ 411.[7]

22      It is inconsequential whether the underlying action arose from "large scale

23  environmental pollution" or not.  In *American Casualty Company of Reading, PA v.*

24  *Miller*, the court held that the mere fact that widespread contamination beyond the

25  _____

26  [7] To the extent Plaintiff contends that "other harmful substances" (Compl. ¶ 46) or "other toxic substances" (*Quiroz* Compl. ¶ 96) contributed to the underlying claimants' bodily injury, it further supports the application of the general pollution exclusion in the Policies (*see, e.g.,* Erikson Decl., Ex. A at p. 59; Ex. B at p. 344; Ex. C at p. 475; and Ex. D at p. 529 (defining the term "Pollutants" to include "irritant[s] or contaminant[s]" such as "chemicals," among other things)).

1   immediate area of effect was prevented was not dispositive of whether the event at

2   issue was "commonly thought of as environmental pollution." *See Am. Cas. Co. of*

3   *Reading, PA v. Miller*, 159 Cal. App. 4th 501, 516 (4th Dist. 2008) ("The test in

4   *MacKinnon* is not based upon the extent of injury, but upon the type of pollutant and

5   how it is released into the environment."); *see also The Villa Los Alamos*

6   *Homeowners Assn. v. State Farm General Ins. Co.*, 198 Cal. App. 4th 522, 540, 542

7   (1st Dist. 2011) (concluding that "the *release* of asbestos fibers into the air" in a

8   single condominium building, although not "widely dispersed," "constituted

9   environmental pollution within the meaning of the pollution exclusion") (emphasis

10   in original).  This is especially the case where, such as here, "there is no safe level of

11   exposure." *See The Villa Los Alamos Homeowners Assn.*, 198 Cal. App. 4th at 540.

12        Finally, the alleged injuries fall within the pollution exclusion contained in

13   some of the Policies that excludes bodily injury arising out of the release of

14   pollutants "[a]t or from any premises, site or location . . . owned or occupied by" the

15   insured or "[a]t or from any premises, site or location on which any insured or any

16   contractors or subcontractors working ***directly or indirectly*** on any insured's behalf

17   are performing operations if the 'pollutants' are brought on or to the premises, site

18   or location ***in connection with*** such operations by such insured, contractor, or

19   subcontractor." Ex. A at pp. 103-04; Ex. B at p. 327-28; Ex. E at pp. 655-56; and

20   Ex. F at pp. 877-878 (emphasis added).  The underlying claimants allege that

21   Plaintiff is "a vertically integrated company" that has "manufactured, designed,

22   imported, produced, sold, tested, failed to test, supplied, contracted, brokered and/or

23   distributed the stone slab and block products to which [claimant] was exposed in his

24   work as a countertop fabricator and installer." *Quiroz* Compl.  ¶¶ 1175-76, 1284.

25   The claimants also allege that the unfinished product they received from Plaintiff

26   required fabrication in order to be turned into a usable consumer product, which

27   process caused their injury. *Id.* ¶ 1188.  Accordingly, the claimants both received

28   the product they complain of from Plaintiff's premises and worked directly or, at a

- 19 -

1    minimum, indirectly on Plaintiff's behalf by fabricating its product for its intended

2    consumer use, which operations brought the pollutants on the working premises.

3        For all the foregoing reasons, the pollution exclusion in each of the Policies at

4    issue bars Plaintiff's coverage claim.[8]

### 3.    Because Coverage Is Excluded, Plaintiff's Remaining Allegations Regarding Breach of Contract and Anticipatory Breach Fail

7        Plaintiff's remaining allegations of breach of contract predicated on Plaintiff's

8    interpretation of Travelers' coverage position with respect to the application of

9    Texas' substantive law and pro rata allocation principles, and whether the

10   Underlying Lawsuits constitute a single "occurrence" had the alleged injury not

11   been excluded (Compl. ¶ 74), are moot.  The fact that silica and pollution exclusions

12   preclude *any* coverage under the Policies renders any questions regarding the choice

13   of substantive law or allocation principles irrelevant.

14       Similarly, Plaintiff's third cause of action for anticipatory breach of contract

15   also fails because it is predicated on the same alleged underlying conduct as

16   Plaintiff's second cause of action for breach of contract.  Courts have routinely

17   dismissed such claims as duplicative and this Court should do the same here.  *See,*

18   *e.g., Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, 801 F. Supp. 2d

19   1023, 1038 n.16 (S.D. Cal. 2011) (observing that "a separate anticipatory breach

20   claim would be redundant of the breach claim").

---

[8] Because coverage is clearly barred under either the silica or the pollution exclusion, Plaintiff's allegation that Defendants did not conduct a further investigation or inquire into some hypothetical "possible bases that might support coverage for the Underlying Litigation" is meritless and contrary to black-letter law.  *See Gunderson v. Fire Ins. Exch.*, 37 Cal. App. 4th 1106, 1114 (1st Dist. 1995) ("[A]n insurer does not have a continuing duty to investigate whether there is a potential for coverage. If it has made an informed decision on the basis of the third party complaint and the extrinsic facts known to it at the time of tender that there is no potential for coverage, the insurer may refuse to defend the lawsuit."); *accord Pace Integrated Sys., Inc. v. RLI Ins. Co.*, 196 Fed. Appx. 514, 516-17 (9th Cir. 2006).

**B.    Plaintiff's Fourth Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing Is Precluded by Plaintiff's Failure to State a Claim for Breach of Contract**

Because Plaintiff cannot establish breach of contract by Travelers for all the reasons set forth above, Plaintiff's bad faith claim fails as a matter of law.  It is well settled that a "bad faith claim cannot be maintained unless policy benefits are due." *Waller,* 11 Cal. 4th at 36; *see also MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.,* 187 Cal. App. 4th 766, 784 (2d Dist. 2010) ("[T]here can be no breach of [the implied covenant of good faith and fair dealing] unless policy benefits are due under the contract.").  Accordingly, where there is no potential for coverage and, hence, no duty to defend under the terms of the policy, no bad faith cause of action may lie.  *Waller,* 11 Cal. 4th at 36 (emphasis in original); *accord Islands Rests., LP v. Affiliated FM Ins. Co.,* 532 F. Supp.3d 948 (S.D. Cal. 2021); *see also Love v. Fire Ins. Exchange*, 221 Cal. App. 3d 1136, 1153 (4th Dist. 1990) (explaining that "[a]bsent that primary right [to coverage] . . . , the *auxiliary* implied covenant has nothing upon which to act as a supplement") (emphasis in original).

Because coverage here is expressly barred by the silica and pollution exclusions in the Policies, Travelers cannot be liable for bad faith as a matter of law.  Thus, the Court should enter judgment on the pleadings dismissing Plaintiff's claim. *Film Allman, LLC v. New York Marine & Gen Ins. Co.*, 2016 U.S. Dist. LEXIS 170148, at *16 (C.D. Cal. Dec. 7, 2016) ("Because coverage is excluded, [insurer's] refusal to pay cannot have been in bad faith.  A cause of action for insurance bad faith is auxiliary to the primary right of receiving benefits of the contract.").

## <u>CONCLUSION</u>

For the foregoing reasons, based on the silica and pollution exclusions in the Travelers Policies, the Court should grant Travelers' motion without leave to amend.

1    Dated:  June 16, 2025                SIMPSON THACHER & BARTLETT LLP

2

3                                        By:    /s/ Chet A. Kronenberg
                                                Chet A. Kronenberg
4

5                                        *Attorney for Defendants The Charter Oak*
                                         *Fire Insurance Company and The Travelers*
6                                        *Property Casualty Company of America*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR JUDGMENT ON THE PLEADINGS
No. 2:25-CV-03895 MRA (MAAx)

1

## **L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendants The Charter Oak Fire Insurance Company and The Travelers Property Casualty Company of America, certifies that this brief contains 6,962 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 16, 2025                    SIMPSON THACHER & BARTLETT LLP

By:  */s/ Chet A. Kronenberg*
      Chet A. Kronenberg

*Attorney for Defendants The Charter Oak Fire Insurance Company and The Travelers Property Casualty Company of America*