Shaun H. Crosner (SBN 259065)
SCrosner@McGuireWoods.com
Craig M. Hirsch (SBN 258906)
CHirsch@McGuireWoods.com
L. Noelle Malindzak (SBN 335622)
NMalindzak@McGuireWoods.com
McGuireWoods LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone: (310) 315-8200
Facsimile: (310) 315-8210

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| SURFACE WAREHOUSE, LP,<br><br>              Plaintiff,<br><br>   vs.<br><br>THE CHARTER OAK FIRE INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; AMERICAN ECONOMY INSURANCE COMPANY; WEST AMERICAN INSURANCE COMPANY; AMERICAN STATES INSURANCE COMPANY; THE OHIO CASUALTY INSURANCE COMPANY; AND DOES 1-50.<br><br>              Defendants. | Case No.: 2:25-cv-03895-MRA (MAAx)<br><br>Assigned to the Hon. Mónica Ramírez Almadani<br><br>**SURFACE WAREHOUSE, LP'S OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date: August 18, 2025<br>Time: 1:30 p.m.<br>Place: Courtroom 9B<br><br>*[Filed concurrently with Request for Judicial Notice, Declaration of Shaun Crosner, Declaration of Lee Wood, Proposed Order]*<br><br><br>(On Removal from Los Angeles County Superior Court, Case No. 25STCV09497) |

---

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

# **TABLE OF CONTENTS**

Page No.

I.     INTRODUCTION ..................................................................7

II.    STANDARD OF REVIEW ....................................................8

III.   TRAVELERS FAILS TO ESTABLISH THAT IT IS ENTITLED TO
       JUDGMENT AS A MATTER OF LAW..................................9

       A.    Travelers' Duty to Defend Turns on the Mere Potential for
             Coverage..........................................................................9

       B.    Travelers Ignores the Governing Rules of Policy Interpretation. ............10

       C.    The Silica Exclusion—Which Only Appears In Four of the
             Policies—Does Not Bar Coverage for the Underlying Lawsuits. ..........11

             1.    Surface Warehouse's Reasonable Interpretation of the Silica
                   Exclusion Governs. ..................................................11

             2.    The Underlying Plaintiffs Allege Potentially Covered Bodily
                   Injuries Arising From Exposure to Volatile Organic
                   Compounds—Which Are Gases, Not "Silica" or "Silica-Related
                   Dust." ...................................................................13

             3.    The Underlying Plaintiffs Also Allege Non-Excluded Bodily
                   Injuries Arising from Exposure to Metal Particles. ..............14

             4.    In Light of the Above Points and Authority, the Court Should
                   Reach a Different Result Here Than It Did in *Hanover v.
                   Francini* ................................................................19

       D.    The Pollution Exclusion Also Does Not Apply. ...........................20

             1.    Travelers Fails to Satisfy the Pollution Exclusion's Locational
                   Requirement. .........................................................21

             2.    Travelers Also Fails to Demonstrate That the Underlying
                   Plaintiffs' Alleged Injuries Resulted from "Traditional
                   Environmental Pollution." ........................................22

             3.    The Parties' Prior Course of Performance Confirms Their Mutual
                   Intent and Understanding that the Pollution Exclusion Does Not
                   Bar Coverage..........................................................27

       E.    Surface Warehouse Must Be Afforded the Opportunity to Develop
             Extrinsic Evidence. ...........................................................28

       F.    Surface Warehouse Has Asserted Viable Claims for Breach of
             Contract, Anticipatory Breach, Bad Faith, and Declaratory Relief. ........29

IV.    CONCLUSION ...................................................................31

2

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*AIU Ins. Co. v. Superior Ct.*,
   51 Cal. 3d 807 (1990) ..................................................................................28

6
7
*American Cas. Co. v. Miller*,
   159 Cal. App. 4th 501 (2008) .......................................................................24

8
9
*American Zurich Ins. Co. v. James N. Gray Co.*,
   2014 WL 11430928 (C.D. Cal. July 25, 2014) ...............................18, 19, 25, 26

10
11
*Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*,
   45 Cal. App. 4th 1 (1996) ............................................................................18

12
*Atlanta Cancer Care, P.C. v. Amgen, Inc.*,
   359 F. App'x 714 (9th Cir. 2009).................................................................29

13
14
*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
   100 Cal. App. 4th 1017 (2002)...............................................................*passim*

15
16
*Buss v. Superior Ct.*,
   16 Cal. 4th 35 (1997) ...................................................................................27

17
18
*CNA Cas. v. Seaboard Sur. Co.*,
   176 Cal. App. 3d 598 (1986) ..........................................................................9

19
20
*Cold Creek Compost, Inc. v. State Farm Fire & Cas. Co.*,
   156 Cal. App. 4th 1469 (2008).....................................................................26

21
22
*Columbia Cas. Co. v. Nw. Nat'l Ins. Co.*,
   231 Cal. App. 3d 457 (1991) ........................................................................28

23
24
*Dore v. Arnold Worldwide, Inc.*,
   39 Cal. 4th 384 (2006) .................................................................................28

25
26
*Elvig v. Calvin Presbyterian Church*,
   375 F.3d 951 (9th Cir. 2004) ..........................................................................8

27
*Employers Reins. Co. v. Superior Ct.*,
   161 Cal. App. 4th 906 (2008) .......................................................................28

28

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

*Fireman's Fund Ins. Cos. v. Atl. Richfield Co.*,
   94 Cal. App. 4th 842 (2001) .................................................................. 13

*Garamendi v. Golden Eagle Ins. Co.*,
   127 Cal. App. 4th 480 (2005) ................................................ 22, 24, 25, 26

*Gonzales v. Free Speech Coal.*,
   408 F.3d 613 (9th Cir. 2005) ............................................................... 24

*Gray v. Zurich Ins. Co.*,
   65 Cal. 2d 263 (1966) ............................................................... 10, 13, 14

*Great Am. Assurance Co. v. MS Indus. Sheet Metal, Inc.*,
   2012 WL 13018550 (C.D. Cal. Jan. 31, 2012) ................................... 25

*Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*,
   801 F. Supp. 2d 1023 (S.D. Cal. 2011) .............................................. 30

*Hanover American Ins. Co. v. Francini, Inc.*,
   2025 WL 1090925 (C.D. Cal. Mar. 27, 2025) ............................... 19, 20

*Haynes v. Farmers Ins. Exch.*,
   32 Cal. 4th 1198 (2004) ..................................................................... 10

*Herrera v. Zumiez, Inc.*,
   953 F.3d 1063 (9th Cir. 2020) ........................................ 8, 20, 22, 29

*Horace Mann Ins. Co. v. Barbara B*,
   4 Cal. 4th 1076 (1993) ........................................................................ 9

*Jordan v. Allstate Ins. Co.*,
   116 Cal. App. 4th 1206 (2004) ........................................................... 12

*Legacy Vulcan Corp. v. Superior Ct.*,
   185 Cal. App. 4th 677 (2010) ............................................................. 17

*Legarra v. Federated Mut. Ins. Co.*,
   35 Cal. App. 4th 1472 (1995) ............................................................. 22

*MacKinnon v. Truck Ins. Exch.*,
   31 Cal. 4th 635 (2003) ................................................................*passim*

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ........................................................... 30

4

*Meraz v. Farmers Ins. Exch.*,
    92 Cal. App. 4th 321 (2001) ................................................................ 10

*Montrose Chem. Corp. v. Superior Ct.*,
    6 Cal. 4th 287 (1993) ...................................................... 9, 10, 13, 14

*National Council of La Raza v. Cegavske*,
    800 F.3d 1032 (9th Cir. 2015) ........................................................ 31

*National Foam, Inc. v. Zurich Am. Ins. Co.*,
    768 F. Supp. 3d 1009 (N.D. Cal. 2025) .............................. 23, 24, 26

*Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
    69 Cal. 2d 33 (1968) ......................................................................... 28

*Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*,
    307 F.3d 944 (9th Cir. 2002) .............................................................. 9

*Relman Colfax PLLC v. Fair Housing Council of San Fernando Valley*,
    2020 WL 5260475 (C.D. Cal. May 28, 2020) ................................... 30

*Taylor v. Johnston*,
    15 Cal. 3d 130 (1975) ....................................................................... 30

*Travelers Prop. Cas. Co. of Am. v. Superior Ct.*,
    215 Cal. App. 4th 561 (2013) ........................................................... 10

*Trident Ctr. v. Conn. Gen. Life Ins. Co.*,
    847 F.2d 564 (9th Cir. 1988) ............................................................ 29

*Villa Los Alamos Homeowners Ass'n v. State Farm Gen. Ins. Co.*,
    198 Cal. App. 4th 522 (2011) ........................................................... 27

*Westco Ins. Co. v. Brad Ingram Constr.*,
    2024 WL 243344 (9th Cir. Jan. 23, 2024) ....................................... 25

**Statutes**

Cal. Civ. Code § 1638 ............................................................................ 28

Cal. Civ. Code § 1644 ............................................................................ 12

Cal. Civ. Proc. Code § 1856(c) .............................................................. 28

5

**Court Rules**

Fed. R. Civ. Proc. 8(d) ........................................................................ 30

Fed. R. Civ. Proc. 12(c) ..................................................................... 8, 9

Fed. R. Civ. Proc. 15(a) ........................................................................ 31

**Other Authorities**

Dust, *Merriam-Webster*, available at https://www.merriam-
     webster.com/dictionary/dust (last visited July 27, 2025) ................................. 12

Particle, *Merriam-Webster*, available at https://www.merriam-
     webster.com/dictionary/particle (last visited July 27, 2025) ............................. 12

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.    <u>INTRODUCTION</u>

By their motion for judgment on the pleadings, Defendants The Charter Oak Fire Insurance Company and The Travelers Property Casualty Company of America (together, "Travelers") ask this Court to deprive Plaintiff Surface Warehouse, LP of nearly $50,000,000 in insurance coverage for more than 125 underlying product liability lawsuits (collectively, the "Underlying Lawsuits"). The Underlying Plaintiffs in these lawsuits are or were stone fabricators who allege that they suffered lung injuries while cutting, grinding, and installing stone slabs that had been created or distributed by Surface Warehouse. The Underlying Plaintiffs allege that while fabricating these stone slabs, they were exposed to silica, metals, volatile organic compounds (or "VOCs"), and other harmful substances in Surface Warehouse's products. Each of the Underlying Plaintiffs alleges that these exposures resulted in chronic lung conditions and caused them to develop pulmonary fibrosis, silicosis, and other lung diseases and ailments.

Travelers issued a series of primary and excess/umbrella commercial general liability policies to Surface Warehouse (collectively, the "Policies") that provide broad coverage for, among other things, lawsuits alleging bodily injuries. Although the Underlying Lawsuits fall squarely within the coverage afforded by the Policies, Travelers now contends that it should be excused from honoring any of its coverage obligations going forward. In its motion, Travelers contends that a pair of exclusions in the Policies—the "Silica Exclusion" (which appears in only four Policies) and the "Pollution Exclusion"—bar coverage for the Underlying Lawsuits in their entirety. Travelers is wrong.

*First*, although Travelers has employed broader exclusionary language in the past, the Silica Exclusion in the Policies issued to Surface Warehouse only bars coverage for alleged bodily injuries caused by silica or specks of dust containing silica particles. The exclusion does not bar coverage for the Underlying Plaintiffs' alleged injuries caused by VOCs, which are gases—and, thus, by definition cannot

7

1  be silica or particles containing silica.  Nor does it bar coverage for the Underlying
2  Plaintiffs' alleged injuries from metal particles, which they contend caused them to
3  develop fibrosis (i.e., scarring of lung tissue).  Because the Underlying Plaintiffs
4  allege myriad lung injuries that are outside the scope of the Silica Exclusion,
5  Travelers cannot negate its broad duty to defend and is not entitled to judgment on
6  the pleadings.

7      *Second*, for the Pollution Exclusion to apply, Travelers must prove that the
8  Underlying Plaintiffs suffered injuries as a result of an environmental pollution
9  event at a location owned, occupied, or rented by Surface Warehouse or one of its
10  contractors or subcontractors.  Travelers makes no meaningful attempt to satisfy the
11  exclusion's locational requirement (and, indeed, it cannot do so).  Regardless, even
12  if Travelers could satisfy the locational requirement, binding California Supreme
13  Court precedent limits pollution exclusions to traditional environmental pollution—
14  which simply does not fit the fact pattern alleged in the Underlying Lawsuits.  Given
15  the serious flaws in Travelers' position, it should come as no surprise that Travelers
16  never attempted to rely on the Pollution Exclusion prior to this litigation.  The
17  parties' prior dealings, which serve as strong evidence of their mutual intent and
18  understanding, further undercuts Travelers' reliance on the exclusion.

19  **II.**   **STANDARD OF REVIEW**

20      In deciding Travelers' motion, the Court must accept Surface Warehouse's
21  factual allegations as true, and the Court must assume Travelers' contradictory
22  allegations are false.  *See Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955
23  (9th Cir. 2004).  Travelers' motion can be granted only if, viewing Surface
24  Warehouse's factual allegations in the light most favorable to Surface Warehouse,
25  Travelers proves it is entitled to judgment as a matter of law.  *See Herrera v.*
26  *Zumiez, Inc*., 953 F.3d 1063, 1068 (9th Cir. 2020).

27      As shown below, Travelers falls well short of its burden under Rule 12(c).

28

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

### III.    TRAVELERS FAILS TO ESTABLISH THAT IT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

#### A.    Travelers' Duty to Defend Turns on the Mere Potential for Coverage.

To obtain judgment on the pleadings, Travelers must establish that it owes no duties under the Policies. *Id.* Consequently, to prevail, Travelers must negate its duty to defend—which is very broad under California law.

Indeed, Travelers must defend an underlying lawsuit that is even ***potentially*** covered by the Policies. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993). All that is required to trigger Travelers' defense duty is "a bare 'potential' or 'possibility' of coverage." *Id.* at 300. "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Id.* at 299-300 (citations omitted). "Imposition of an immediate duty to defend is necessary to afford the insured what it is entitled to: the full protection of a defense on its behalf []. California courts have been consistently solicitous of insureds' expectations on this score." *Id.* at 295-96. Moreover, if ***any*** allegation in a complaint is potentially covered, Travelers must defend the ***entire*** action. *See Horace Mann Ins. Co. v. Barbara B*, 4 Cal. 4th 1076, 1084 (1993).

Courts construe allegations in the underlying complaint liberally so that the duty to defend does not depend on inartful drafting by the underlying claimant. *See, e.g., CNA Cas. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 609 (1986) ("[I]t is not the form or title of a cause of action that determines the carrier's duty to defend, but the potential liability suggested by the facts alleged or otherwise available to the insurer."); *see also Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002) ("remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty"). Thus, the only way Travelers can escape its duty to defend is if the Underlying Lawsuits

1  "can by no conceivable theory raise a single issue which could bring it within the
2  policy coverage."  *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 n.15 (1966).

3         In short, to negate its defense duty, Travelers must show the complete and
4  absolute absence of any possibility of coverage.  *Montrose*, 6 Cal. 4th at 300.  As
5  explained below, Travelers fails to do so.

6         **B.      Travelers Ignores the Governing Rules of Policy Interpretation.**

7         Travelers argues that the Silica and Pollution Exclusions bar coverage for the
8  Underlying Lawsuits as a matter of law.  The California rules governing the
9  interpretation of policy exclusions establish otherwise.

10        Exclusions must be both conspicuous and "plain and clear in order to be given
11 effect." *Travelers Prop. Cas. Co. of Am. v. Superior Ct.*, 215 Cal. App. 4th 561, 575
12 (2013).  In fact, the California Supreme Court has "declared time and again 'any
13 exception to the performance of the basic underlying obligation must be so stated as
14 clearly to apprise the insured of its effect.'" *Haynes v. Farmers Ins. Exch.*, 32 Cal.
15 4th 1198, 1204 (2004). "This means more than the traditional requirement that
16 contract terms be 'unambiguous.' Precision is not enough. Understandability is also
17 required." *Id.* at 1211. Thus, an exclusion is subject to the "closest possible
18 scrutiny." *Id.* at 1212; *see also Meraz v. Farmers Ins. Exch.*, 92 Cal. App. 4th 321,
19 324-5 (2001) ("the burden rests upon the insurer to phrase exceptions and exclusions
20 in clear and unmistakable language").

21        Furthermore, Travelers cannot prevail unless it demonstrates that its
22 interpretation of the disputed policy language is the only reasonable interpretation.
23 *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 655 (2003) ("even if [an insurer's]
24 interpretation is considered reasonable, it would still not prevail, for in order to do
25 so it would have to establish that its interpretation is the *only* reasonable one").
26 "Thus, an insurer that wishes to rely on an exclusion has the burden of proving,
27 through conclusive evidence, that the exclusion applies in all possible worlds."
28 *Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (2002).

10

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1    Thus, Travelers faces a high burden on its motion—one that it does not

2    satisfy.

3    **C.    The Silica Exclusion—Which Only Appears In Four of the**

4    **Policies—Does Not Bar Coverage for the Underlying Lawsuits.**

5    Travelers contends that the allegations in the Underlying Lawsuits

6    "unmistakably arise from the silica dust emanating from the products during the

7    fabrication process."  Travelers overreaches.  The Underlying Lawsuits allege

8    injuries caused by numerous different constituents and materials—with some

9    injuries allegedly caused by exposure to "silica" and "silica-related dust" as those

10   terms are used in the Silica Exclusion, but with other injuries allegedly caused by

11   exposure to VOCs, metals, and other non-silica materials in Surface Warehouse's

12   products.  Because VOCs and metals plainly are not "silica" or "silica-related dust,"

13   Travelers fails to prove that the Silica Exclusion bars coverage in "all possible

14   worlds." *Atlantic*, 100 Cal. App. 4th at 1039.

15   **1.    Surface Warehouse's Reasonable Interpretation of the Silica**

16   **Exclusion Governs.**

17   As a preliminary matter, the Silica Exclusion is not nearly as broad as

18   Travelers suggests.  By its terms, the Silica Exclusion only bars coverage for those

19   ***specific*** alleged bodily injuries "arising out of the actual, alleged or threatened

20   discharge, dispersal, emission, release, escape, handling, contact with, exposure to

21   or inhalation or respiration of 'silica' or 'silica-related dust.'"  *See* Motion at 3.

22   Therefore, the Silica Exclusion cannot be read to bar coverage for discrete bodily

23   injuries caused by something other than "silica" or "silica-related dust."

24   The definitions of "silica" and "silica-related dust" further limit the scope of

25   the Silica Exclusion.  "Silica" is defined as "silicon dioxide (occurring in crystalline,

26   amorphous and impure forms), silica particles, silica dust or silica compounds."  *Id.*

27   "Silica-related dust," in turn, is defined as "a mixture or combination of 'silica' and

28   other dust or particles."  *Id.*

1    Because the Policies do not define "dust" or "particles," those terms must be

2  "understood in their ordinary and popular sense."  Cal. Civ. Code § 1644.  "It is well

3  settled that in order to construe words in an insurance policy in their 'ordinary and

4  popular sense,' a court may resort to a dictionary."  *Jordan v. Allstate Ins. Co.*, 116

5  Cal. App. 4th 1206, 1216 (2004).

6    Dictionaries define "dust" and "particle" to mean a tiny speck of solid matter.

7  *See, e.g.*, Dust, *Merriam-Webster*, available at https://www.merriam-

8  webster.com/dictionary/dust (last visited July 27, 2025) (defining "dust" as "a single

9  particle" and "fine dry powdery particles"); Particle, *Merriam-Webster*, available at

10 https://www.merriam-webster.com/dictionary/particle (last visited July 27, 2025)

11 (defining "particle" as "a minute [] fragment" or "the smallest discrete portion or

12 amount of something").  Thus, under their plain and ordinary meanings (as

13 confirmed by dictionary definitions), "dust" and "particle" as used in the Silica

14 Exclusion can reasonably be interpreted to mean a tiny grain or speck of solid

15 matter.

16    Contrary to Travelers' motion, the Silica Exclusion—read in its entirety—is

17 quite narrow.  It only bars coverage for those specific bodily injuries and diseases

18 that arise from exposure to (1) silica or (2) tiny specks of solid matter containing

19 silica.  Because Surface Warehouse's reasonable interpretation of the Silica

20 Exclusion governs, it does not matter whether Travelers' interpretation also is

21 reasonable.  *See MacKinnon*, 31 Cal. 4th at 655.  That said, Travelers' proffered

22 interpretation is untenable.

23    Travelers lobbies for a broad interpretation of "dust"—one that encompasses

24 all "stone dust" generated in the fabrication process.  Motion at 13-14.  But under

25 the governing policy interpretation rules, the "dust" and "particles" referenced in the

26 Silica Exclusion must be construed narrowly to mean a tiny speck of matter.

27 Regardless, even under Travelers' overbroad interpretation, the Silica Exclusion

28 would not bar coverage for injuries caused by exposure to gases—which are not

12

1  compromised of solid matter, and which cannot reasonably be characterized as dust

2  or particles.

3      Thus, it is at least reasonable for Surface Warehouse to interpret the Silica

4  Exclusion as being inapplicable to discrete bodily injures caused by exposure to

5  gases or tiny specks of metal.  And, under Surface Warehouse's reasonable

6  interpretation (which governs under California law), Travelers bears the burden of

7  proving that ***each and every*** injury alleged in the Underlying Lawsuits is excluded.

8  *See Montrose*, 6 Cal. 4th at 300; *Gray*, 65 Cal. 2d at 275 n.15; *Atlantic*, 100 Cal.

9  App. 4th at 1039.  As explained below, Travelers falls well short of doing so.

10      This conclusion is bolstered by the fact that Travelers routinely employs

11  broader exclusionary language in other policy forms.  Indeed, another Travelers

12  form in circulation prior to the issuance of the Policies bars coverage for injuries

13  arising from the alleged inhalation of silica, ***as well as*** from the alleged "inhalation

14  of any other solid, liquid, gaseous or thermal irritant or contaminant" that are part of

15  a lawsuit alleging bodily injuries from exposure to silica.  *See* Declaration of Shaun

16  Crosner, ¶¶ 4-5.  The fact that Travelers made the deliberate decision not to use this

17  broader exclusionary language makes clear that it intended and understood that the

18  Silica Exclusion in the Policies would be interpreted and applied more narrowly.

19  *See Fireman's Fund Ins. Cos. v. Atl. Richfield Co.*, 94 Cal. App. 4th 842, 852 (2001)

20  ("several courts have observed an insurance company's failure to use available

21  language to exclude certain types of liability gives rise to the inference that the

22  parties intended not to so limit coverage").

23          **2.    The Underlying Plaintiffs Allege Potentially Covered Bodily**

24              **Injuries Arising From Exposure to Volatile Organic**

25              **Compounds—Which Are Gases, Not "Silica" or "Silica-**

26              **Related Dust."**

27      Travelers' motion rises and falls on the premise that all of the Underlying

28  Plaintiffs' alleged bodily injuries necessarily arose out of exposure to stone dust that

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1  contained silica.  But Travelers entirely overlooks the Underlying Plaintiffs'
2  allegations that they were exposed to volatile organic compounds ("VOCs") emitted
3  from Surface Warehouse's products and, as a result, allegedly suffered from
4  respiratory illnesses, lung damage, and lung disease, including fibrosis.  *See* Surface
5  Warehouse's Appendix of Allegations ("SWAA"), Appendix 1.  Under any
6  reasonable interpretation of the Silica Exclusion, these alleged bodily injuries
7  arising from exposure to VOCs simply are not excluded.

8      As the United States Environmental Protection Agency has explained, VOCs
9  are ***gases*** that are emitted from certain solids or liquids.  *See* Surface Warehouse's
10  Request for Judicial Notice ("RFJN"), ¶ 1.  As noted above, the Silica Exclusion
11  only bars coverage for those specific bodily injuries arising out of exposure to
12  "silica" or "silica-related dust."  VOCs do not fall within the scope of either term.

13      ***First***, VOCs are not "silica," which the Silica Exclusion defines to include
14  silicon dioxide, silica particles, silica dust, or silica compounds.  VOCs are gases, so
15  by definition they cannot qualify as "silica."  This is because, unlike VOCs (which
16  are carbon-based gases), all forms of silica (silicon dioxide) are solid matter
17  comprised of silicon and oxygen atoms.  RFJN, ¶¶ 1-2.

18      ***Second***, because VOCs are gases (and, again, not solid matter), they are not
19  dust or particles of the sort that can combine with silica to form "silica-related dust."

20      Thus, the Silica Exclusion does not bar coverage for any of the Underlying
21  Lawsuits—all of which allege lung damage and other respiratory ailments caused by
22  exposure to VOCs from Surface Warehouse's products.  *See Montrose*, 6 Cal. 4th at
23  300; *Gray*, 65 Cal. 2d at 275 n.15; *Atlantic*, 100 Cal. App. 4th at 1039.

24      **3.    The Underlying Plaintiffs Also Allege Non-Excluded Bodily**
25      **Injuries Arising from Exposure to Metal Particles.**

26      In addition to the VOCs, the Underlying Plaintiffs also allege that they were
27  exposed to and inhaled metals contained within Surface Warehouse's products, and
28  that those exposures caused fibrosis, lung damage, and other non-silicosis

14

conditions.  Because the Underlying Plaintiffs allege that these injuries were caused by exposure to metal particles—and not "silica" or "silica-related dust"—they fall outside the scope of the Silica Exclusion.

Travelers' contrary argument does not withstand scrutiny.  Travelers asserts that the Underlying Plaintiffs do not articulate "how any bodily injury alleged in the Underlying Lawsuits was caused by anything other than silica."  This is simply not true.  The underlying complaints are replete with allegations that the Underlying Plaintiffs were exposed to and inhaled metals and, as a result of these alleged exposures, developed fibrosis and related lung conditions.  *See* SWAA 2.

Attempting to downplay these allegations of bodily injuries arising from metal exposure, Travelers suggests that all of the Underlying Plaintiffs' alleged injuries necessarily resulted from exposure to "silica-related dust."  Travelers overreaches, and its argument disregards the undisputed science concerning pulmonary fibrosis and the impact that metal particles can have on lung tissue.

Indeed, pulmonary fibrosis is a disease that occurs when lung tissue becomes damaged and scarred.  RFJN, ¶ 3.  When lung tissue becomes damaged and scarred, the alveoli (or air sacs) within the lungs do not allow oxygen to pass into the bloodstream as efficiently as in healthy lungs, making it difficult (and, if the condition becomes chronic, impossible) for afflicted individuals to breathe normally.  RFJN, ¶ 4.  A comparison of a healthy lung and a lung afflicted with pulmonary fibrosis is below:

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16  National Heart, Lung, and Blood Institute, *What is Pulmonary Fibrosis? Fact Sheet*,

17  *available at* https://www.nhlbi.nih.gov/resources/what-pulmonary-fibrosis-fact-

18  sheet (last visited July 27, 2025).

19        Fibrosis as depicted above is the result of cell injury or death and

20  inflammation that can occur when a foreign particle—such as a speck of metal—

21  comes into contact with alveoli in the lungs.  RFJN, ¶ 5.  In some instances,

22  contact with foreign particles can result in the immediate injury to one or more cells

23  surrounding the alveoli.  RFJN, ¶ 6.  In other instances, the presence of a foreign

24  particle and related tissue injury triggers a biological response from surrounding

25  macrophages (white blood cells that engulf and digest pathogens, microorganisms,

26  other particles of foreign debris, and debris resulting from cell death), which in turn

27  results in lung inflammation designed to initiate the recovery process.  RFJN, ¶ 7.

28  Over time, repetitive exposure to foreign particles and repetitive re-injury of cells in

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1    the lung can lead to cell death and, ultimately, the generation of fibrotic scar tissue

2    to replace dead cells in the lung.  RFJN, ¶ 8.  When the scarring becomes extensive

3    enough, clinical symptoms of pulmonary fibrosis become apparent.  RFJN, ¶ 9.

4         Thus, fibrosis is not simply a lung disease.  It is the culmination of thousands

5    (or millions) of discrete bodily injuries occurring over time at the cellular and tissue

6    level.  And, importantly for purposes of Travelers' motion, each of these discrete

7    bodily injuries (i.e., cell damage and death) can result from interaction with an

8    individual agent (including, as relevant here, a metal particle).

9         Given the allegations in the Underlying Lawsuits and the medical

10   community's knowledge of how pulmonary fibrosis develops, Travelers cannot

11   possibly prove that every one of the discrete injuries alleged in the Underlying

12   Lawsuits arose out of exposure to "silica" or "silica-related dust."  Indeed, when the

13   Underlying Plaintiffs allege that they developed fibrosis, they are implicitly alleging

14   that they suffered myriad discrete lung injuries over some period of time, each

15   resulting from the inhalation of a tiny particle.  It does not matter that the

16   Underlying Plaintiffs do not expressly allege that they suffered myriad discrete

17   bodily injuries, since these allegations are fairly inferable from their more general

18   allegations concerning fibrosis.  *See Legacy Vulcan Corp. v. Superior Ct.*, 185 Cal.

19   App. 4th 677, 693 (2010) (duty to defend triggered "[i]f any facts stated or fairly

20   inferable in the complaint" suggest potentially covered claim).

21        And, critically, Travelers "has the burden of proving, through conclusive

22   evidence, that the [Silica Exclusion] applies in all possible worlds." *Atlantic*, 100

23   Cal. App. 4th at 1039.  To clear this hurdle, Travelers must show that every alleged

24   or fairly-inferable fibrotic injury in the Underlying Lawsuits necessarily resulted

25   from "silica" or "silica-related dust."  There is no evidence in the record—let alone

26   ***conclusive*** evidence—that would allow Travelers to carry its burden of proof.  As a

27   result, Travelers' argument fails.

28

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1    Surface Warehouse's focus on the Underlying Plaintiffs' alleged cellular
2    injuries is rooted in well-established bedrocks of California insurance law.  For
3    instance, in *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45
4    Cal. App. 4th 1 (1996), the California Court of Appeal analyzed coverage for
5    underlying lawsuits filed by thousands of individuals who allegedly developed
6    bodily injuries from inhalation of asbestos contained in the insureds' products.  The
7    policies at issue in *Armstrong*, like the Policies issued to Surface Warehouse,
8    covered lawsuits alleging bodily injuries, sickness, and disease.  Before concluding
9    that these underlying lawsuits triggered coverage in all of Armstrong's policies
10   issued from the date of the underlying claimants' first exposure to the date when
11   their injuries manifested, the *Armstrong* court reviewed and recounted extensive
12   medical evidence concerning the types of cellular injuries—and the body's fibrotic
13   response—that can result from the inhalation of asbestos.  *Id.* at 37-39; *see also id.*
14   at 44 (concluding that trial court's reliance upon medical evidence to make findings
15   regarding "processes that actually occur upon inhalation of asbestos fibers and
16   continue until death" was entirely appropriate).

17       Similarly, the Court's focus here must be on the Underlying Plaintiffs'
18   alleged discrete fibrotic injuries and, specifically, what caused each of them.  Rather
19   than allowing Travelers to paint with a broad brush, the Court must hold Travelers
20   to its burden of proving that the Silica Exclusion applies in all "possible worlds."

21       *American Zurich Insurance Co. v. James N. Gray Co.*, 2014 WL 11430928
22   (C.D. Cal. July 25, 2014), is instructive.  In *American Zurich*, the insurer moved for
23   summary judgment, arguing that a silica exclusion barred coverage for underlying
24   litigation alleging injuries from exposure to chemical products "'contain[ing]
25   significant concentrations of aromatic solvents, aliphatic solvents, naphthenic
26   solvents, chlorinated solvents, other organic solvents, silica, and other toxic
27   chemicals.'"  *Id.* at *1.  The court denied the motion, emphasizing that the
28   underlying plaintiffs' alleged injuries were caused by silica and "dozens of other

18

OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS

1  chemicals." *Id.* at *6 ("the fact that silica is involved in a lawsuit cannot negate any

2  possibility of coverage sufficient to relieve [the insurer] of a duty to defend").

3      Here, as in *American Zurich*, the myriad fibrotic injuries at issue in the

4  Underlying Lawsuits are not all alleged to be caused by "silica" or "silica-related

5  dust."  To the contrary, 83 Underlying Plaintiffs expressly allege that exposure to

6  metals from Surface Warehouse's products was a "substantial factor" in causing

7  their fibrosis and related fibrotic injuries.  *See* SWAA, Appendix 3.  Thus, the Silica

8  Exclusion does not apply in "all possible worlds" and does not negate Travelers'

9  broad duty to defend.  *See Atlantic*, 100 Cal. App. 4th at 1039.[1]

10      **4.**    <u>**In Light of the Above Points and Authority, the Court**</u>

11          <u>**Should Reach a Different Result Here Than It Did in**</u>

12          <u>***Hanover v. Francini*.**</u>

13      Travelers relies on this Court's prior order in *Hanover American Insurance*

14  *Co. v. Francini, Inc.*, 2025 WL 1090925 (C.D. Cal. Mar. 27, 2025), for the

15  proposition that the Underlying Plaintiffs are primarily focused on silica exposure

16  and silicosis and, therefore, their allegations concerning VOCs, metals, and other

17  constituents should be disregarded.  However, at the time the Court decided

18  *Hanover*, only 17 Underlying Lawsuits were at issue—and, perhaps more

19  fundamentally, two critical arguments were not before the Court in *Hanover*.

20  Indeed, the Court's decision in *Hanover* does not address potentially covered

21  allegations concerning the Underlying Plaintiffs' alleged injuries resulting from

22  VOCs, nor does it address potentially covered allegations concerning the myriad

23  discrete fibrotic injuries alleged and fairly inferable in the Underlying Lawsuits.[2]

24

25  [1] The Underlying Plaintiffs' allegations concerning "wet" fabrication methods

26  further undermine Travelers' position.  As noted above, "dust" is a dry substance under its plain and ordinary meaning.

27  [2] In addition to VOCs and metals, the underlying complaints also contain allegations

28  of exposure to, and bodily injury resulting from, toxins, vapors, fumes, gases, resins,

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1    Surface Warehouse respectfully submits that, contrary to this Court's prior

2  ruling in *Hanover*, the arguments, authority, and undisputable scientific and medical

3  principles presented by Surface Warehouse compel the conclusion that the

4  Underlying Lawsuits allege potentially covered injuries outside the scope of the

5  Silica Exclusion.  Consequently, the Silica Exclusion—which, again, appears in

6  only four of the Policies issued by Travelers—does not bar coverage for any of the

7  Underlying Lawsuits, and Travelers is not entitled to judgment on the pleadings.

8  *See Herrera*, 953 F.3d at 1068.

9    **D.    The Pollution Exclusion Also Does Not Apply.**

10    Travelers also fails to establish that the Pollution Exclusion excuses its duty

11  to defend.  The Pollution Exclusion bars coverage for environmental pollution from

12  "pollutants" released from Surface Warehouse's property or at locations where it or

13  its "contractors or subcontractors" are performing operations.[3]  Thus, for the

14  exclusion to apply, Travelers must demonstrate both that (1) the Underlying

15  Plaintiffs' alleged injuries resulted from a release of pollutants at one of the

16  locations referenced in the exclusion and (2) the fabrication of stone slabs amounts

17  to traditional environmental pollution.  As explained below, Travelers stumbles at

18  both steps.  Surface Warehouse did not own, occupy, or operate at any location

19  where the Underlying Plaintiffs allege their injuries occurred.  And, under binding

20  California Supreme Court authority, the stone fabrication work done by the

21

22  pigments, and other non-silica substances.  SWAA 1, 2.  These allegations further
    underscore the potential for coverage presented by the Underlying Lawsuits.

23  [3] The Pollution Exclusion is quoted in full in Travelers' motion.  *See* Motion at 3-4.

24  As Travelers notes, the excess/umbrella Policies contain two different exclusions—
    with the exclusion in the excess section mirroring the exclusion in the primary

25  policy, and the exclusion in the umbrella section being slightly different.  However,

26  the Policies' umbrella coverage only comes into play if the Policies' primary and
    excess coverage is unavailable—which, here, is simply not the case.  Accordingly,

27  Surface Warehouse focuses herein on the Pollution Exclusion in the primary
    Policies and the excess section in the excess/umbrella Policies.

28

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1  Underlying Plaintiffs cannot reasonably be characterized as "traditional

2  environmental pollution."  Thus, the exclusion is inapplicable.

3         Further undermining Travelers' position, the parties have operated for years

4  under the mutual understanding that the Pollution Exclusion does not bar coverage

5  for the Underlying Lawsuits.  Given the parties' prior conduct, which California law

6  regards as the best evidence of their true intent and understanding, Travelers'

7  attempt to rely on the Pollution Exclusion rings hollow.

8         1.    **Travelers Fails to Satisfy the Pollution Exclusion's**

9               **Locational Requirement.**

10        When determining whether the Pollution Exclusion applies, the Court must

11  focus first on ***where*** the alleged injury-causing events purportedly occurred.  Indeed,

12  the Pollution Exclusion only bars coverage for bodily injuries caused by

13  environmental pollution "at or from" a business location either (a) "owned or

14  occupied by, or rented" by Surface Warehouse, or (b) where Surface Warehouse or

15  "contractors or subcontractors working directly or indirectly" on its behalf are

16  "performing operations."  *See* Motion at 3-4.  At this threshold step in the analysis,

17  Travelers' argument falls flat.

18        Surface Warehouse sells unfinished stone slabs to third-party countertop

19  fabricators who convert them into countertops through a fabrication process.  *See*

20  Declaration of Lee Wood ("Wood Decl."), ¶¶ 2-5.  The Underlying Plaintiffs allege

21  injuries sustained in the course of their work fabricating stone products within

22  fabrication shops owned or operated by third parties.  *See* SWAA, Appendices 1-2,

23  5.  They do not allege that any of their work occurred at any locations owned,

24  occupied, or rented by Surface Warehouse (and it did not).  *See* Wood Decl., ¶ 3-7.

25  Neither they nor their employers were Surface Warehouse's contractors or

26  subcontractors.  *Id.*  They also do not allege that any of their injuries arose from

27  Surface Warehouse's shipments of unfinished stone slabs prior to fabrication.  *See*

28  *generally* ECF No. 23-1, Exs. 3-131 (underlying complaints).

21

1    Given what the Underlying Plaintiffs allege (and, more importantly, what
2 they do **not** allege), Travelers cannot possibly satisfy the Pollution Exclusion's very
3 specific locational requirements. *See Legarra v. Federated Mut. Ins. Co.*, 35 Cal.
4 App. 4th 1472, 1477, 1480-81 (1995) ("[A]t or from any site or location" speaks to
5 the "origin of the pollution" and requires the "dispersal of pollution is 'at or from'
6 the insured's property."); *see also Garamendi v. Golden Eagle Ins. Co.,* 127 Cal.
7 App. 4th 480, 487 (2005) (noting, in dicta, that locational requirements in pollution
8 exclusions ordinarily would be construed to require "pollution occurring at a
9 particular location for which the insured was somehow responsible").

10    Given the lack of factual allegations or evidence satisfying the locational
11 requirement in the Pollution Exclusion, Travelers' motion must be denied.  *See*
12 *Herrera*, 953 F.3d at 1068.

13    **2.    <u>Travelers Also Fails to Demonstrate That the Underlying</u>**
14    **<u>Plaintiffs' Alleged Injuries Resulted from "Traditional</u>**
15    **<u>Environmental Pollution."</u>**

16    Even if Travelers could somehow satisfy the Pollution Exclusion's locational
17 requirement (which, again, it cannot), it still could not establish that the exclusion
18 applies.  This is because the Underlying Lawsuits do not allege a "traditional
19 environmental pollution" event.

20    The parties agree that *MacKinnon* governs how to interpret the remaining
21 language in the Pollution Exclusion, which bars coverage for injuries "arising out of
22 the actual, alleged or threatened discharge, dispersal, seepage, migration, release or
23 escape of 'pollutants.'"  Motion at 3.  In *MacKinnon*, the California Supreme Court
24 limited this language to "events commonly thought of as pollution, i.e.
25 environmental pollution," which does not extend to "ordinary acts of negligence
26 involving toxic chemicals."  31 Cal. 4th at 639, 653.  In reaching this conclusion, the
27 *MacKinnon* court emphasized that the pollution exclusion was the insurance
28 industry's response to major "environmental disasters" and sought to reduce "the

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1   'enormous expense and exposure resulting from the 'explosion' of *environmental*

2   litigation" and to avoid potential liabilities arising from the "discharge of hazardous

3   substances *into the environment*," and "environmental catastrophes related to

4   intentional industrial pollution" by insureds.  *Id.* at 645, 653.

5        The *MacKinnon* court also noted that a narrow interpretation of the exclusion

6   is both required under California's policy interpretation rules and consistent with

7   insureds' reasonable expectations.  The court stressed that reasonable insureds

8   would expect pollution exclusions to bar coverage only for injuries resulting from

9   "'irritants and contaminants *commonly* thought of as pollution and not as applying to

10  every possible irritant or contaminant imaginable.'" *Id.* at 652-53.  The *MacKinnon*

11  court also noted that a narrow interpretation of the exclusion was reasonable in light

12  of the purpose of commercial general liability policies, which are designed to

13  "'provide the insured with the broadest spectrum of protection against liability for . .

14  . personal injury . . . arising out of the conduct of the insured's business.'" *Id.* at

15  654.

16       As Travelers acknowledges, *MacKinnon* dictates that application of the

17  Pollution Exclusion requires consideration of the mechanism of harm—and,

18  specifically, whether such mechanism is commonly understood to constitute

19  traditional environmental pollution.  Motion at 15; *see also MacKinnon*, 31 Cal. 4th

20  at 652-53; *National Foam, Inc. v. Zurich Am. Ins. Co.,* 768 F. Supp. 3d 1009, 1017

21  (N.D. Cal. 2025) (noting that courts applying *MacKinnon* "recognize that 'pollution'

22  is not just a class of substances . . . , but also a mechanism of harm", and holding

23  that exposure to a product's chemicals "through their ordinary use [is] not via

24  general environmental pollution").

25       Here, Surface Warehouse's distribution of stone slabs to third parties whose

26  employees fabricated and cut those slabs within the confined workspaces of small

27  fabrication shops would not be commonly understood as a "traditional

28  environmental pollution" event under *MacKinnon* and its progeny.  *See MacKinnon,*

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1   31 Cal. 4th at 652-53 (construing pollution exclusion narrowly to bar coverage for

2   "events commonly thought of as . . . environmental pollution"); *National Foam*, 768

3   F. Supp. 3d at 1017 ("The [] plaintiffs allege that they were exposed to [chemicals]

4   through their ordinary use of National Foam's products, not via general

5   environmental pollution (i.e., a contaminated water supply)."); *American Cas. Co. v.*

6   *Miller*, 159 Cal. App. 4th 501, 508 (2008) (*MacKinnon* "found the pollution

7   exclusion clause was intended to exclude coverage for injuries resulting from events

8   commonly thought as environmental pollution, not all injuries arising from toxic

9   substances").  Nor would an insured in Surface Warehouse's position reasonably

10  expect the Pollution Exclusion to eliminate coverage for stone slab manufacturers

11  and distributors that are not involved in the fabrication process.  *See MacKinnon*, 31

12  Cal. 4th at 648 (requirement that exclusions "must be *conspicuous, plain and clear* .

13  . . applies with particular force when the coverage portion of the insurance policy

14  would lead an insured to reasonably expect coverage for the claim purportedly

15  excluded").

16      In its motion, Travelers asserts that courts have "applied the reasoning of

17  *MacKinnon* to exclude coverage in a wide range of contexts, including claims

18  involving the dissemination of silica dust."  Motion at 16.  Travelers' authority is

19  readily distinguishable.

20      Travelers relies most heavily on *Garamendi*—a case of limited precedential

21  value due to its unusual procedural posture.  127 Cal. App. 4th at 484-85 ("Because

22  the insurer is in liquidation, the scope of our review of the determinations of both

23  the superior court and the liquidation trustees in the resolution of claims by insureds

24  against an insolvent carrier is circumscribed.").[4]  As Travelers notes, the *Garamendi*

25  _____

26  [4] Because of its peculiar procedural posture, the *Garamendi* court adhered to an
    "abuse of discretion" standard to confirm the liquidation court's application of the

27  pollution exclusion and did not perform a *de novo* review.  *Id.*  "Abuse of discretion

28  is a 'highly deferential standard.'"  *Gonzales v. Free Speech Coal.*, 408 F.3d 613,

24

1  court observed that the "widespread dissemination of silica dust" could be deemed

2  "environmental pollution" if the release of pollution and harm inflicted was extreme,

3  far-reaching, and substantial.  *Id.* at 482, 486 (finding silica dust to be an

4  environmental pollutant when it is "suspended in the air and travels over a large

5  distance" across a "very large area" due to the insured's "industrial sandblasting

6  operations," thereby "subjecting many workers . . . to an unreasonable risk of

7  harm.").

8        The facts here are materially different.  Each Underlying Plaintiff alleged

9  direct exposure to silica, metals, VOCs, and other substances while personally

10  fabricating unfinished stone stabs within indoor, confined workspaces of a

11  fabrication shop.  *See* SWAA, Appendices 4,5.  These direct, localized exposures

12  cannot reasonably be characterized as traditional environmental pollution.  *See, e.g.*,

13  *Garamendi*, 12 Cal. App. 4th at 486 ("[U]nder *MacKinnon* the mere fact that silica,

14  like almost anything else, may be an irritant or contaminant under some

15  circumstances is not dispositive."); *Great Am. Assurance Co. v. MS Indus. Sheet*

16  *Metal, Inc.*, 2012 WL 13018550, at *4 (C.D. Cal. Jan. 31, 2012) (pollution

17  exclusions inapplicable where plaintiffs were exposed to toxic chemicals in

18  "localized area").

19        Further, the Underlying Lawsuits do not allege or describe a "mechanism of

20  harm" traditionally thought of as causing an environmental pollution event.  *See*

21  *Westco Ins. Co. v. Brad Ingram Constr.*, 2024 WL 243344, at *1 (9th Cir. Jan. 23,

22  2024) (Under *MacKinnon*, "both the character of the injurious substance and

23  whether exposure occurred due to a mechanism specified in the policy" must be

24  considered).  *American Zurich* is illustrative.  The *American Zurich* court

25  distinguished *Garamendi*, finding the pollution exclusion did not apply to the

26  _____

27  618 (9th Cir. 2005).  Therefore, the *Garamendi* court's deferential review of the
   insurer's coverage position does not inform how the Court should evaluate

28  Travelers' position here.

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

"release of 'toxins, including silica and dust'" in the context of commercial demolition and construction activities at a Boeing facility.  2014 WL 11430928, at *4-6.  Nodding to *MacKinnon* and its focus on the insured's reasonable expectations, the *American Zurich* court held:

> In the context of dust released from a demolition site, a layperson might reasonably interpret the pollution exclusion to not exclude more confined releases of dust, as such releases may not commonly be thought of as pollution.  Thus *Garamendi* does not eliminate the possibility of coverage . . . .

*Id.* at *5.  The *American Zurich* court emphasized that, in contrast with the case before it, the underlying allegations in *Garamendi* involved a "widespread dissemination of silica dust" traveling a large distance to injure 47 demolition workers.  *Id.* ("*Garamendi* and this case are materially different because *Garamendi's* facts reflect a situation where dust clouds from construction-related activities could be thought of as traditional pollution.").[5]

Under *MacKinnon* and *American Zurich*, the Underlying Plaintiffs' alleged "direct exposure" to Surface Warehouse's stone products while fabricating in a confined shop is not a traditional environmental pollution event.  *See also National Foam*, 768 F. Supp. 3d at 1016 (pollution exclusion inapplicable "because of the plaintiffs' theory of harm (i.e., direct exposure to [chemical] products)").  Although Travelers incorrectly suggests otherwise, Motion at 18, California courts applying the pollution exclusion routinely consider whether underlying litigation concerns alleged "widespread" or "large scale" environmental pollution.  *See, e.g., Cold*

---

[5] Travelers' out-of-state authority is unavailing.  Motion at 17.  Those cases turned on distinguishable facts, were not decided under California law, did not apply the "traditional environmental pollution" standard and did not analyze the mechanism of harm as required under *MacKinnon*.

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1    *Creek Compost, Inc. v. State Farm Fire & Cas. Co.*, 156 Cal. App. 4th 1469, 1480

2    (2008) (odors "spread[ing] a mile and a half" was "a 'substantial dissemination' . . .

3    ordinarily understood as a 'dispersal of pollutants' into the environment"); *Villa Los*

4    *Alamos Homeowners Ass'n v. State Farm Gen. Ins. Co.*, 198 Cal. App. 4th 522, 540

5    (2011) (applying exclusion to widespread release of asbestos throughout multistory

6    apartment complex and exterior grounds). Indeed, the *MacKinnon* court agreed that

7    alleged localized exposures like the ones at issue in the Underlying Lawsuits do not

8    fall within the ambit of pollution exclusions. *See* 31 Cal. 4th at 651 (agreeing that

9    pollution exclusions should not apply to "localized toxic injury occurring in the

10    vicinity of intended use").

11       Thus, Travelers' position does not withstand scrutiny. It should be rejected.

12         **3.**      **The Parties' Prior Course of Performance Confirms Their**

13              **Mutual Intent and Understanding that the Pollution**

14              **Exclusion Does Not Bar Coverage.**

15       For the above reasons, Travelers' reliance on the Pollution Exclusion is

16    misplaced. It also bears noting, however, that prior to this litigation, Travelers never

17    suggested that the Pollution Exclusion bars coverage for the Underlying Lawsuits.

18    *See* Wood Decl., ¶ 11. To the contrary, Travelers has defended all of the

19    Underlying Lawsuits. *Id.*, ¶ 8. Travelers also has contributed to settlements of the

20    Underlying Lawsuits, *id.* at ¶ 9, confirming its view that such claims are "actually

21    covered." *See Buss v. Superior Ct.*, 16 Cal. 4th 35, 45 (1997) ("The insurer's duty

22    to indemnify [for settlements] runs to claims that are actually covered, in light of the

23    facts proved.").

24       Travelers' pre-litigation conduct speaks volumes and demonstrates that,

25    contrary to Travelers' motion, the parties shared a mutual intent and understanding

26    that the Pollution Exclusion would not apply to claims like the Underlying Lawsuits.

27    Indeed, "'[t]he conduct of the parties after execution of the contract and before any

28    controversy has arisen as to its effect affords ***the most reliable evidence*** of the

1  parties' intentions.'" *Employers Reins. Co. v. Superior Ct.*, 161 Cal. App. 4th 906,

2  921 (2008) (emphasis added); *accord* Cal. Civ. Proc. Code § 1856(c) (contract terms

3  may be explained by parties' "course of performance").  This is important because

4  the parties' mutual intent and understanding is the touchstone of policy

5  interpretation.  *See* Cal. Civ. Code § 1638; *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d

6  807, 821 (1990).

7       Thus, the parties' course of performance further undermines Travelers'

8  misplaced reliance on the Pollution Exclusion.

9    **E.    Surface Warehouse Must Be Afforded the Opportunity to Develop**

10        **Extrinsic Evidence.**

11      As explained above, Travelers' positions conflict with well-established

12  principles of insurance law.  However, to the extent there is any doubt as to whether

13  Travelers' motion should be denied, Surface Warehouse respectfully submits that it

14  should be afforded the opportunity to develop and introduce extrinsic evidence to

15  further undercut Travelers' positions.

16      Under California law, extrinsic evidence is "admissible to show mutually

17  shared meaning of words used irrespective of their ordinary meaning," and such

18  evidence cannot "be barred simply because of a judicial determination that a writing

19  appears to have only one interpretation." *Columbia Cas. Co. v. Nw. Nat'l Ins. Co.*,

20  231 Cal. App. 3d 457, 470 n.3 (1991). This is because "rational interpretation [of

21  contract language] requires at least a preliminary consideration of all credible

22  evidence offered to prove the intention of the parties." *Pacific Gas & Elec. Co. v.*

23  *G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 39–40 (1968). Thus, "'[e]ven

24  if a contract appears unambiguous on its face, a latent ambiguity may be exposed by

25  extrinsic evidence.'" *Dore v. Arnold Worldwide, Inc.*, 39 Cal. 4th 384, 391 (2006).

26      Accordingly, even when policy language appears to be unambiguous, a

27  district court cannot grant a motion for judgment on the pleadings without affording

28  the non-moving party the "opportunity to present extrinsic evidence as to the

28

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1  intention of the parties in drafting the contract." *Trident Ctr. v. Conn. Gen. Life Ins.*

2  *Co.*, 847 F.2d 564, 570 (9th Cir. 1988) (The California Supreme Court's rule

3  governing extrinsic evidence and contract interpretation "is a rule that binds us").

4  "'Indeed, it is reversible error for a trial court to refuse to consider such extrinsic

5  evidence on the basis of the trial court's own conclusion that the language of the

6  contract appears to be clear and unambiguous on its face.'" *Atlanta Cancer Care,*

7  *P.C. v. Amgen, Inc.*, 359 F. App'x 714, 716 (9th Cir. 2009).

8         Here, Surface Warehouse anticipates that discovery will yield evidence

9  relevant to the interpretation of the Silica and Pollution Exclusions, including

10  evidence concerning (i) the exclusions' drafting history, (ii) Travelers' intent and

11  understanding of the exclusions, and (iii) the ways Travelers has applied those

12  exclusions in the handling of other insureds' claims for coverage, including in the

13  Underlying Lawsuits.

14         Given that this Court must consider relevant extrinsic evidence, Surface

15  Warehouse must be given a reasonable opportunity to develop that evidence. *See,*

16  *e.g.*, *Trident*, 847 F.2d at 570.  For this additional reason, Travelers' motion must be

17  denied.

18     **F.    Surface Warehouse Has Asserted Viable Claims for Breach of**

19            **Contract, Anticipatory Breach, Bad Faith, and Declaratory Relief.**

20         Because Travelers fails to establish that the Silica and Pollution Exclusions

21  bar coverage for the Underlying Lawsuits as a matter of law, Travelers is not

22  entitled to judgment on the pleadings as to Surface Warehouse's breach of contract

23  and declaratory relief claims.  *See Herrera*, 953 F.3d at 1068.

24         Travelers also lacks legitimate grounds to seek judgment as a matter of law as

25  to Surface Warehouse's claim for anticipatory breach of contract.  Travelers argues

26  that this claim is "duplicative" of Surface Warehouse's breach of contract claim.

27  Travelers is wrong.  As the California Supreme Court has stated:

28

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

> When a promisor repudiates a contract, the injured party
> faces an election of remedies: he can treat the repudiation
> as an anticipatory breach and immediately seek damages
> for breach of contract, thereby terminating the contractual
> relation between the parties, or he can treat the repudiation
> as an empty threat, wait until the time for performance
> arrives and exercise his remedies for actual breach [] at
> such time.

*Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975).  Although Surface Warehouse may at some point be required to decide between its available remedies, it is not required to do so now.  *Cf. Relman Colfax PLLC v. Fair Housing Council of San Fernando Valley*, 2020 WL 5260475, at * 5 (C.D. Cal. May 28, 2020) ("At the pleading stage, Plaintiff is not required to choose between alternative remedies, and thus asserting [alternative declaratory relief and anticipatory breach] claims is proper."); *see also* Fed. R. Civ. Proc. 8(d) (parties may plead separate claims based on alternative theories).[6]

Finally, Travelers' only basis for seeking dismissal of Surface Warehouse's bad faith claim is its incorrect view that the Policies exclude coverage for the Underlying Lawsuits.  However, because Surface Warehouse's contract-based claims are viable, dismissal of its bad faith claim would be inappropriate.  *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008)

---

[6] Although Travelers suggests that courts "routinely" dismiss anticipatory breach claims premised on the same conduct as breach claims, it cites only one case for the proposition—*Hammes Co. Healthcare, LLC v. Tri-City Healthcare Dist.*, 801 F. Supp. 2d 1023, 1038 n.16 (S.D. Cal. 2011).  The quotation from *Hammes* cited by Travelers is dicta and pertained to a party's potential future amendment of its operative complaint to include an anticipatory breach claim.  *Hammes* is, therefore, unavailing.

1  (error to grant motion to dismiss bad faith claim when breach of contract claim is

2  viable).

3  **IV.    CONCLUSION**

4        For the above reasons, the Court should deny Travelers' motion in its entirety.

5  However, to the extent the Court is persuaded by any of Travelers' arguments,

6  Surface Warehouse respectfully requests leave to amend its complaint.[7]

7

8  DATED:  July 28, 2025          McGuireWoods LLP

9

10                   By:  */s/ Shaun H. Crosner*

11                      Shaun H. Crosner

12                      Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26   [7] Leave to amend should be freely given when justice so requires. *See* Fed. R. Civ.

27 Proc. 15(a); *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir.

28 2015) (court must afford "at least one chance to amend . . . absent a clear showing that amendment would be futile").

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2      The undersigned, counsel of record for Plaintiff Surface Warehouse, LP,

3  certifies that this brief contains 6,999 words, which complies with the word limit of

4  L.R. 11-6.1, excluding the parts of the document exempted by L.R. 11-6.1.

5

6  DATED:  July 28, 2025              McGuireWoods LLP

7

8                          By:  _/s/ Shaun H. Crosner_

9                              Shaun H. Crosner
                               Attorneys for Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS**