UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:**     **(IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS [23]**

Before the Court is Defendants' Motion for Judgment on the Pleadings.  ECF 23.  The
Court read and considered the moving, opposing, and reply papers, and held a hearing on the
Motion on November 24, 2025.  For the reasons stated herein, the Court **DENIES** the Motion.

## I.    BACKGROUND

This is an insurance coverage dispute arising out of personal injury claims brought by
stoneworkers against various manufacturers and distributors of artificial stone products.  Plaintiff
Surface Warehouse, LP ("Plaintiff" or "Surface Warehouse") brings this action for declaratory
relief against Defendants The Charter Oak Fire Insurance Company and The Travelers Property
Casualty Company of America (collectively, "Travelers") and Defendants American Economy
Insurance Company, West American Insurance Company, American States Insurance Company
and The Ohio Casualty Insurance Company (collectively, "Liberty" and together with Travelers,
"Defendants").

Surface Warehouse has been named as a defendant in more than 125 underlying lawsuits
in California state court alleging bodily injuries purportedly resulting from exposure to harmful
substances in Plaintiff's products (the "Underlying Actions").  ECF 1-2 ¶ 1.  In the Underlying
Actions, the plaintiffs (the "Underlying Plaintiffs") allege that Surface Warehouse's product
contained hazardous substances including respirable crystalline silica, as well as metals and
volatile organic compounds, which caused injuries including silicosis and other medical
conditions.  The thrust of Travelers' instant Motion is that coverage under the insurance policies
issued by the Insurers to Surface Warehouse is precluded by the "Silica Exclusions," and
separately, by the "Pollution Exclusions" contained in the policies.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

### A.    The Underlying Actions[1]

One such Underlying Action was filed by Cesar Manuel Gonzalez Quiroz.   Mr. Quiroz's complaint includes the following allegations relevant to the instant Motion:

- "All stone products contain crystalline silica in varying concentrations from the lowest concentration of about 3-5% in marble to about 93-95% in traditional artificial stone."   ECF 23-4 ¶ 93.

- The fabrication of stone products "produces large amounts of respirable crystalline silica dust which stone fabrication workers inhale, typically causing chronic silicosis as well as lung cancer and various other silica-related diseases."   *Id.* ¶ 95.

- Fabrication workers "are not only exposed to high concentrations of respirable crystalline silica, but are also exposed to other toxic substances in artificial stone, including metals used as pigments and polymeric resins as binders."   *Id.* ¶ 96.

- "In addition to crystalline silica, pulmonary fibrosis (scarring of the lung tissue) is caused by many metals that are constituents of artificial stone, including aluminum, antimony, arsenic, chromium, cobalt, copper, iron, manganese, nickel, titanium, tungsten, and vanadium."   *Id.* ¶ 97.

- "Fabricating artificial stone products also produces volatile organic compounds (VOCs), the predominant species being styrene, but also including phthalic anhydride, benzene, ethylbenzene, and toluene.   Styrene and phthalic anhydride are respiratory irritants that cause various pulmonary effects including asthma, bronchiolitis obliterans, decreased lung function as well as sclerosis and fibrosis."   *Id.* ¶ 98.

- "Throughout the course of his work" as a stone cutter, Mr. Quiroz "worked with

---

[1] Travelers ask the Court to take judicial notice of the underlying complaints against Plaintiff.   ECF 23-142.   Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."   Fed. R. Evid. 201.   Courts "may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).   The Court therefore takes judicial notice of the underlying complaints identified in Travelers' request for judicial notice.   ECF 23-142 at 6–16.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

inherently hazardous stone products manufactured, imported, supplied, distributed, contracted, and/or brokered, by [Surface Warehouse]. [Mr. Quiroz] was thereby exposed to and inhaled stone dust containing silica and other toxins and carcinogens, as well as artificial stone dust containing respirable crystalline silica (including quartz and cristobalite), metals . . . and volatile organic compounds from polymeric resins and other binders (including phthalic anhydride, benzene, ethylbenzene, and toluene) emitted from these products)." *Id.* ¶ 111.

- "As a direct and proximate result of his exposure to silica, metals and other toxins within said stone products . . . [Mr. Quiroz] developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and other forms of lung damage, and therefore has a significantly increased risk of developing other silica-related diseases such as lung cancer, chronic kidney disease, and autoimmune disorders such as rheumatoid arthritis, systemic lupus erythematosus, and systemic sclerosis (scleroderma)." *Id.* ¶ 112.

- "At no time did [Mr. Quiroz] personally ascertain any ingredients or contaminants of the stone products to which he was exposed in the course of his work that caused his lung disease; [Mr. Quiroz] personally remains ignorant of the identity of those hazardous substances to which he was exposed at work that caused his lung disease." *Id.* ¶ 119.

- "As a result of [Mr. Quiroz's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Quiroz's] body and caused Plaintiff to suffer from specific illnesses, to wit, silicosis and related medical conditions, as set forth in more detail herein." *Id.*¶ 1306.

- "Each of Defendants' stone products contained silica and toxic metals, that entered [Mr. Quiroz's] body and was a substantial factor in causing, prolonging, and aggravating his silicosis and his related and consequential injuries." *Id.* ¶ 1307.

These allegations or substantially similar allegations appear in the complaint of each Underlying Action.

**B.      The Policies and Exclusions**

The alleged policies issued by Defendants are described in detail in Plaintiff's complaint. ECF 1-2 ¶¶ 14–40. In summary, between 2011 and 2024, Defendants each issued various types of primary and/or excess/umbrella policies subject to varying limits. As relevant to the instant Motion, Travelers issued four primary and four excess follow-form and umbrella commercial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

liability insurance policies between March 27, 2021, and March 27, 2025 (the "Policies"). *Id.* ¶¶ 33–40.[2]

Four of the policies issued by Travelers (two primary and two excess/umbrella) contain an exclusion for silica or silica-related dust (the "Silica Exclusion"). That provision excludes from coverage "bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of silica or silica-related dust." ECF 23-134 at 134 (quotation marks omitted). The Silica Exclusion defines silica as "silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds,' and it defines "silica-related dust" as "a mixture or combination of silica and other dust or particles." *Id.*

Each of the eight policies issued by Travelers contain a Pollution Exclusion. That provision excludes from coverage "bodily injury . . . arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants'":

> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; . . .

> (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the 'pollutants' are brought on or to the premises, site or location in connection with such operations by such insured, contractor, or subcontractor.

ECF 23-134 at 100.

The policies issued by Travelers obligate Travelers to defend Plaintiff and pay all sums Plaintiff becomes legally obligated to pay as damages because of "bodily injury" that is caused by an "occurrence." ECF 1-2 ¶ 41–42.

Surface Warehouse alleges that Travelers has incorrectly reserved rights as to future obligations to defend or indemnify Plaintiff in the Underlying Actions, relying on the exclusions described above. *Id.* ¶ 58. According to Plaintiffs, Travelers has also asserted that all of the Underlying Actions involve a single "occurrence," and that once it paid the $10,000 occurrence

---

[2] Travelers asks the Court to take judicial notice of Travelers' policies issued to Surface Warehouse because the policies are referenced in and form the basis of the complaint. ECF 23-142 at 3. The Court agrees that the Policies are incorporated by reference into Surface Warehouse's Complaint. *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

limit, it would have no further obligations under the policies issued.  *Id.* ¶ 59.

### C.    Procedural History

Based upon the foregoing allegations, Surface Warehouse asserted four causes of action: (1) declaratory judgment against all Defendants, (2) breach of contract against Travelers, (3) anticipatory breach of contract against Travelers, and (4) tortious breach of the duty of good faith and fair dealing against Travelers.  ECF 1-2.  Surface Warehouse initiated this action on April 1, 2024, in Los Angeles Superior Court.  ECF 1 at 2.  On May 1, 2025, Defendants removed the action to federal court.  *Id.*  Travelers and Liberty filed separate answers on May 8, 2025.  ECF 13; ECF 14.

On June 16, 2025, Travelers filed the instant Motion for Judgment on the Pleadings.  ECF 23.  Surface Warehouse opposed.  ECF 26.  Liberty did not join the Motion.

On May 6, 2025, Travelers filed a Notice of Related Case, indicating that this action concerns the same Underlying Actions and policy exclusions as those at issue in *Hanover American Insurance Co. et al. v. Francini, Inc.*, No. 2:23-cv-10047-MRA-MAA ("*Hanover*"). ECF 8.  Surface Warehouse objected to the Notice.  ECF 16.  This action was then transferred to the undersigned judge pursuant to General Order 24-04.  ECF 20.  Several additional coverage actions were filed by other insurance providers and stone companies concerning the same Underlying Actions and similar silica and pollution policy exclusions, each of which were also noticed as related to *Hanover* and transferred to the undersigned judge.  *Pacific Shore Stones, LLC et al. v. Allied Property and Casualty Co. et al.* No. 2:25-cv-04370-MRA-MAA (C.D. Cal. May 14, 2025); *Regent Insurance Company et al. v. Cambria Enterprises et al.*, No. 2:25-cv-04142-MRA-MAA (C.D. Cal. May 8, 2025); *Regent Insurance Company et al. v. Stone Source LLC*, No. 2:25-cv-06702-MRA-MAA (C.D. Cal. July 22, 2025).  The insurers filed motions for judgment on the pleadings in every action, including the instant action, and four of the motions were heard on November 24, 2025.  ECF 45.

## II.    LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Motions for judgment on the pleadings are "functionally identical to Rule 12(b)(6) motions."  *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)) (internal quotation marks omitted).  Therefore, "when ruling on either type of motion 'courts must consider the complaint in its entirety, as well as other sources . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"  *Id.* (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

551 U.S. 308, 322 (2007)).

On a motion for judgment on the pleadings, "[j]udgment is properly granted when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *San Francisco Taxi Coal. v. City & Cnty. of San Francisco*, 979 F.3d 1220, 1223 (9th Cir. 2020). "A plaintiff is not entitled to judgment on the pleadings when the answer raises issues of fact that, if proved, would defeat recovery." *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). "Similarly, if the defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings." *Id.* (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1368 (1969)).

## III. DISCUSSION

### A. Insurance Coverage Principles

"A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity." *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (cleaned up). A "carrier must defend a suit which [p]otentially seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966). "Implicit in this rule is the principle that the duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded," or in an action where damages arise from an injury that is ultimately determined to fall outside the scope of the policy or within an exclusion. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993); *see also Saylin v. California Ins. Guarantee Assn.*, 179 Cal. App. 3d 256, 263 (1986) ("[T]he duty [to defend] may exist even where coverage is in doubt and ultimately does not develop." (internal quotation marks omitted)).

The duty to defend is triggered by a "bare 'potential' or 'possibility' of coverage." *Montrose*, 6 Cal. 4th at 300. To prevail in an action seeking declaratory relief on the issue of the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Id.* "The duty to defend does not usually turn on whether facts supporting a covered claim predominate or generate the claim." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 951 (9th Cir. 2002). "Thus, even where . . . the allegations in the underlying complaint are primarily focused on non-covered claims, the Court 'look[s] not to whether noncovered acts predominate in the third party's action, but rather to whether there is any potential for liability under the policy.'" *KM Strategic Mgmt., LLC v. Am. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1168 (C.D. Cal. 2015) (quoting *Horace Mann*, 4 Cal. 4th at 1084).

"The determination whether the insurer owes a duty to defend is usually made in the first

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

instance by comparing the allegations of the complaint with the terms of the policy." *Horace Mann*, 4 Cal. 4th at 1081. "Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Id.* (citing *Gray*, 65 Cal. 2d at 276). Stated differently, "facts known to the insurer and extrinsic to the third party complaint can generate a duty to defend, even though the face of the complaint does not reflect a potential for liability under the policy." *Montrose*, 6 Cal. 4th at 296 (citing *Gray*, 65 Cal. 2d at 276). On the other hand, "the insured may not speculate about unpled third party claims to manufacture coverage." *Albert v. Mid-Century Ins. Co.*, 236 Cal. App. 4th 1281, 1290 (2015) (quotation marks omitted); *The Upper Deck Co. v. Fed. Ins. Co.*, 358 F.3d 608, 616 (9th Cir. 2004)). "The possibility of an amendment does not require the insurer to speculate about any conceivable claim that a plaintiff might bring against the insured or to spin out wild theories of recovery for every conceivable damage." *The Upper Deck Co.*, 358 F.3d at 616.

In a "mixed" action, in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend the action in its entirety. *Buss v. Superior Ct.*, 16 Cal. 4th 35, 48 (1997).

### B.      The Silica Exclusion

Travelers argues that Plaintiff's claims for declaratory relief, breach of contract, and anticipatory breach of contract fail because the Silica Exception contained in four of the policies issued by Travelers precludes coverage of the Underlying Actions. ECF 23 at 17. Travelers argues that the injuries alleged in the Underlying Actions fall within the broad language in the Silica Exclusion, which excludes from coverage injuries "arising out of" exposure to silica or silica-related dust. *Id.* at 17–19.

Surface Warehouse argues in response it has satisfied its burden of demonstrating that the Underlying Actions involve "potentially covered" injuries because the underlying plaintiffs allege that they were injured through exposure to volatile organic compounds ("VOCs") and metal particles, which fall outside the scope of the Silica Exclusion. ECF 26 at 13–15. Surface Warehouse argues that as a biological matter, it is impossible to establish that the injuries alleged in the Underlying Actions, including pulmonary fibrosis, arose out of exposure to "silica" or "silica related dust." *Id.* at 15–18.

The Silica Exclusion bars from coverage any bodily injury "arising, in whole or in part" out of silica or silica-related dust. Thus, in considering Travelers' Motion, the Court must consider whether there is a possibility that the Underlying Actions involve bodily injuries that do not "arise from" silica or silica-related dust. The Court answers this question by looking at the Underlying Plaintiffs' allegations, as well as facts extrinsic to the complaints. *See Montrose*, 6 Cal. 4th at 295; *Gray*, 65 Cal. 2d at 276. If such a possibility exists, then Travelers owes a duty

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

to defend, regardless of whether the underlying injuries were predominantly, primarily, or substantially caused by silica or silica-related dust. *See KM Strategic Mgmt.*, 156 F. Supp. 3d at 1168

It is undisputed that the Underlying Plaintiffs allege that they were "not only exposed to high concentrations of respirable crystalline silica, but [were] also exposed to other toxic substances in artificial stone," including many metals and VOCs which can cause pulmonary fibrosis and other pulmonary effects. ECF 23-4 ¶¶ 96–99. Moreover, it appears undisputed that such metals or VOCs do not meet the Policies' definition of "silica." The parties do dispute whether VOCs, which Surface Warehouse claims are gases, would meet the Policies' definition of "silica-related dust." ECF 26 at 14; ECF 30 at 13; ECF 23-134 at 134 (defining silica-related dust as a "mixture or combination of silica and other *dust* or *particles*" (emphasis added)). The Court must draw reasonable inferences in Surface Warehouse's favor, and it is reasonable to infer that that gaseous substances would not fall within the meaning of "dust" as articulated by the Policies. Finally, it is undisputed that the Underlying Plaintiffs allege these non-silica substances contributed to their injuries. ECF 23-4 ¶ 1306 ("As a result of [Mr. Quiroz's] exposure to each of Defendants' stone products, silica, metals and other toxins entered [Mr. Quiroz's] body and caused [Mr. Quiroz] to suffer from specific illnesses."). In other words, the Underlying Plaintiffs allege that they were exposed to toxic substances that are neither silica nor silica-related dust (and thus covered under the Policies) and that those substances contributed to their injuries.

The question remains, however, whether the Silica Exclusion bars coverage for those injuries where the Underlying Plaintiffs allege that silica and silica-related dust *also* contributed to those injuries. The Court concludes it does not.

Critically, each Underlying Plaintiff alleges that they "remain[] ignorant of the identity of those hazardous substances to which [they] were exposed at work that caused [their] lung disease." ECF 23-4 ¶ 119. The Underlying Plaintiffs allege that various toxic substances (generally speaking, silica, metals, and VOCs) can independently cause the lung injuries they suffer from, including lung disease and/or pulmonary fibrosis. *Id.* ¶¶ 96–97. But among these different substances, any individual Underlying Plaintiff does not know which precise substance caused their precise injuries. Given these allegations in the Underlying Actions, it is possible that toxic substances *other* than silica or silica-related dust were the sole cause of the pulmonary fibrosis or lung disease suffered by the Underlying Plaintiffs. In other words, the Underlying Actions present the possibility that the Underlying Plaintiffs' injuries were not caused by silica or silica-related dust at all—whether that possibility is remote or unlikely is irrelevant.

Ultimately, it is Travelers' burden to show that the Silica Exclusion applies—*i.e.*, to show that the injuries alleged in the Underlying Actions *do* arise in whole or in part out of the alleged

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

inhalation of silica or silica-related dust. *See ML Direct, Inc. v. TIG Specialty Ins. Co.*, 79 Cal. App. 4th 137, 141 (2000) ("When it comes to exclusions, the insurer bears the burden of proving the exclusion applies."). Given the scientific and fact-intensive nature of the injuries alleged, the Insurers cannot meet this burden at the present stage.

The Court acknowledges that it reached a different conclusion in its prior order granting the insurers' motion for judgment on the pleadings in *Hanover*. The Court has revisited its decision in that case, and with the benefit of additional briefing and argument from counsel, the Court recognizes that its first order in *Hanover* characterized silica as the "primary" or "main" cause of the Underlying Plaintiffs' injuries. *See Hanover*, ECF 66 at 8. But whether silica "predominates" in the Underlying Actions' complaints is irrelevant to whether the Silica Exclusion precludes coverage. *See Horace Mann*, 4 Cal. 4th at 1084. The dispositive question as to the Insurers' Motion is whether there is a "bare 'potential' or 'possibility'" that the Underlying Plaintiffs' bodily injuries were caused by a non-excluded substance, and the Court concludes that there is.

To be sure, silica "predominates" in the Underlying Actions in the sense that the exposures to and the injuries caused by non-excluded substances are uniformly alleged in combination with silica. For instance, Mr. Quiroz alleges that as a result of his exposure to Surface Warehouse's stone products, "silica, metals *and* other toxins" entered his body and caused him to suffer from "silicosis, pulmonary fibrosis, and related medical conditions." ECF 23-4 ¶ 1306 (emphasis added). Mr. Quiroz also alleges that "[e]ach toxin, including silica *and* metals, that entered [Mr. Quiroz's] body was a substantial factor in bringing about . . . [Mr. Quiroz's] silicosis and his related consequential injuries." *Id.* ¶ 1325 (emphasis added). Reading these allegations in isolation, it would be plausible to conclude that silica contributed, at least in part, to each of the Underlying Plaintiffs' injuries, which would bring the injuries into the scope of the broadly phrased Silica Exclusion.

But upon closer examination of the Underlying Actions and the applicable law, the Court cannot ignore allegations appearing elsewhere in the complaint: that Mr. Quiroz developed lung disease characterized by pulmonary nodules, silicosis, pulmonary fibrosis, progressive massive fibrosis, and that at least some of those conditions can be independently caused by metals and VOCs. ECF 23-4 ¶¶ 96–97, 112. Such allegations, in tandem with the allegation that Mr. Quiroz is ignorant of the identity "of those hazardous substances . . . that caused his lung disease," "suggest a claim potentially covered by the [Policies]," and thus trigger a duty to defend. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 655 (2005). To the extent that the allegations in the Underlying Actions contradict each other or create any ambiguity as to the cause of the Underlying Plaintiffs' injuries, any such ambiguity or doubt must be resolved in Surface Warehouse's favor. *James River Ins. Co. v. SureFire, LLC*, No. 8:24-CV-01556-JVS-KES, 2025

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

WL 1287891, at *6 (C.D. Cal. Mar. 6, 2025) ("Any ambiguity in the complaint or doubt as to whether the facts give rise to a duty to defend must be resolved in favor of the insured." (citing *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1270 (9th Cir. 2010))).

Moreover, insofar as the Underlying Actions can be interpreted to allege that excluded and non-excluded causes *both* contributed to an Underlying Plaintiffs' injuries, such allegations would not eliminate the duty to defend, even under the broad language of the Silica Exclusion, pursuant to California's concurrent cause doctrine. In *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal. 3d 94 (1973), the California Supreme Court held that where a "homeowner's policy excluded injuries 'arising out of the use of' an automobile, such exclusion does not preclude coverage when an accident results from the concurrence of a non-auto-related cause and an auto-related cause." *Id.* at 97. The Court further held that where a non-excluded "risk is a proximate cause of an injury, liability attaches to the insured, and coverage for such liability should naturally follow." *Id.* The Court went on to explain that "[c]overage cannot be defeated simply because a separate excluded risk constitutes an additional cause of the injury." *Id.*

*Partridge* therefore instructs that, because silica and non-silica substances are each alleged to be substantial factors in causing the Underlying Plaintiff's injuries, the Silica Exclusion does not defeat coverage. In a subsequent case, the California Supreme Court held that "tort law (substantial factor) causation is sufficient to create coverage *under a liability policy* when covered and excluded acts or events have concurred in causing injury or property damage." *California v. Allstate Ins. Co.*, 45 Cal. 4th 1008, 1036 (2009). In *Allstate*, the Court considered whether the insurer was liable for property damage, some of which was caused by covered, accidental pollutant discharges, and some of which was caused by excluded, nonaccidental pollutant discharges. *Id.* at 1030. The exclusion in *Allstate* included the same broad "arising out of" language appearing in the Silica Exclusion here. *Id.* at 1016. And the Court concluded that the fact "that an excluded cause of property damage[] also contributed to the contamination is insufficient to defeat *Partridge*'s holding that liability coverage exists 'whenever an insured risk constitutes a proximate cause of an accident, even if an excluded risk is a concurrent proximate cause.'" *Id.* at 1032 (quoting *Partridge*, 10 Cal. 3d at 105).

*Partridge* and *Allstate* together compel the conclusion that where two substances—one excluded and the other covered—are each alleged to be a substantial factor in causing the underlying plaintiff's injuries, the broad "arising out of" language in the exclusion cannot be applied to defeat coverage. A different judge in this district recently applied *Partridge* to a materially similar dispute to reach the same conclusion. *Sompo America Insurance Company v. LX Hausys America, Inc.*, No. CV 25-2832-JFW(MAAx), 2025 WL 4061607, at *4 (C.D. Cal. Dec. 22, 2025). The Court finds the reasoning in *Sompo* persuasive here and similarly concludes that the Insurers "cannot avoid [their] duty to defend where an insured risk and excluded risk are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

alleged to constitute concurrent proximate causes of the underlying plaintiffs' bodily injuries." *Id.*

Drawing all reasonable inferences in Surface Warehouse's favor, as the Court must do in resolving the Insurers' Motion, the Court concludes that Surface Warehouse has demonstrated the existence of a potential for coverage—*i.e.*, the existence of injuries in the Underlying Actions that would not fall within the scope of the Silica Exclusion.

### C.    Pollution Exclusion

Travelers separately argues that Plaintiff's claims are barred by the Pollution Exclusion contained in each of the Policies. ECF 23 at 21. The Pollution Exclusion excludes from coverage "'bodily injury' arising out of the actual, alleged, or threatened discharge, dispersal, release, or escape of 'pollutants.'" ECF 23-134 at 100. The Pollution Exclusion also contains a locational requirement, which requires that such discharge occur:

a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any Insured. . . .

(b) At or from any premises, site or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste; . . . [or]

(d) At or from any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations by such Insured, contractor or subcontractor.

*Id.* Surface Warehouse argues that the Pollution Exclusion does not apply because the alleged injuries do not satisfy the Pollution Exclusions' locational requirements and because the Underlying Actions do not involve "traditional environmental pollution." ECF 26 at 21. Travelers argues that the locational requirement is satisfied because the Underlying Plaintiffs received the products at issue from Plaintiffs' premises and worked indirectly on Plaintiffs' behalf by fabricating the product for its intended use, and the release of silica is pollution under existing case law. ECF 23 at 23–25.

Based on the complaints in the Underlying Actions, the Court agrees that Travelers has not established that the location requirement necessary to trigger the application of the Pollution Exclusion has been satisfied. To prevail on its motion, Travelers "must clearly and conclusively

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

establish on the face of the pleadings that there is no possibility that the Underlying Action[s] falls within the scope of the Policy." *Colorado W. Constr., Inc. v. Mt. Hawley Ins. Co.*, No. 523CV00307ODWSHKX, 2023 WL 8188436, at *3 (C.D. Cal. Nov. 27, 2023). Thus, to avail itself of the Pollution Exclusion, Travelers would need to conclusively establish that every single Underlying Plaintiff performed work at a site (1) owned, occupied, or rented by Surface Warehouse, (2) used by Surface Warehouse for waste handling, or (3) where Surface Warehouse or Surface Warehouse's contractors or subcontractors were performing operations. And the Court cannot identify any allegations in the Underlying Actions that satisfy any of those categories.

Mr. Quiroz, for example, alleges that he inhaled silica-containing dust during his employment at Bernardino Sanchez fabrication shop in San Fernando, California, and 3 Bro Marble in Lawndale, California. ECF 23-4 ¶¶ 106–09. Mr. Quiroz does not allege—and Travelers does not contend—that the shops where he worked were owned or occupied by, or rented or loaned to, Surface Warehouse. Similarly, Mr. Quiroz does not allege—and Travelers does not contend—that Surface Warehouse ever used those shops for the handling, storage, disposal, processing or treatment of waste. And finally, the Court cannot conclude, based on the allegations, that these shops qualify as a "premises, site or location on which any *insured* or any *contractors or subcontractors* working directly or indirectly on any insured's behalf are performing operations." ECF 23-134 at 100 (emphasis added).

Travelers incorrectly contends that as to the third category concerning contractors or subcontractors, "only an 'indirect' connection is required to bring the underlying injuries within the express language Travelers' pollution exclusion." ECF 30 at 24. That argument would read the Pollution Exclusion's reference to "contractors or subcontractors" out of the Policies and render that language meaningless. *C.J. Segerstrom & Sons v. Lexington Ins. Co.*, 724 F. Supp. 3d 1052, 1065 (C.D. Cal. 2023) ("[C]ourts are obligated to give effect to every part of an insurance policy, [and] such policies should not be read in such a way as to render some of its terms meaningless." (citing *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 827–28 (1990)). It is insufficient for Travelers to insist that Mr. Quiroz worked indirectly on Surface Warehouse's behalf without *also* establishing that the site is one where Surface Warehouse (the insured) or *contractors* or *subcontractors* working on Surface Warehouse's behalf performed work. For example, one plausible version of the underlying facts is that 3 Bro Marble purchased stone products from Surface Warehouse, and Mr. Quiroz fabricated those products in his capacity as an employee of 3 Bro Marble. In that scenario, which Travelers not ruled out, there are no "contractors or subcontractors" working on behalf of Surface Warehouse, either directly or indirectly. Although Mr. Quiroz alleges that Surface Warehouse is in the business of "marketing and distributing" stone products, he does not allege that there is any contractual relationship between Surface Warehouse and the fabrication shops at which he was exposed to toxins that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

would bring his injuries within the scope of the Pollution Exclusion.

Setting aside the locational requirement, the Court is not persuaded that the exposure to toxic substances alleged by the Underlying Plaintiffs satisfies the "traditional environmental pollution" test. The parties agree that the applicability of the Total Pollution Exclusion is governed by the California Supreme Court's opinion in *MacKinnon v. Truck Insurance Exchange*, 31 Cal. 4th 635 (2003). ECF 23 at 22; ECF 26 at 22. In *MacKinnon*, a tenant in plaintiff MacKinnon's building died from pesticide exposure after MacKinnon hired a pest control company to exterminate yellow jackets. *Id.* at 640. When the parents of the tenant sued MacKinnon for wrongful death, MacKinnon tendered his defense to Truck Insurance Exchange pursuant to the comprehensive general liability insurance policy Truck Insurance Exchange had issued him. *Id.* Truck Insurance Exchange concluded that the pollution exclusion in the policy precluded coverage for the wrongful death action. The Court held that Truck Insurance Exchange's reading of the exclusion, which would extend to virtually any substance that could be characterized as irritants or contaminants, was untenable. *Id.* at 649. The Court further "limit[ed] the scope of the pollution exclusion to injuries arising from events commonly thought of as pollution, i.e., environmental pollution." *Id.* at 653. Applying that standard, the Court held that "[w]hile pesticides may be pollutants under some circumstances, it is unlikely a reasonable policyholder would think of the act of spraying pesticides under these circumstances as an act of pollution." *Id.* at 654. Under *MacKinnon*, the Court must "put itself in the position of a layperson" to determine whether a pollution exclusion applies to a given injury-causing event. *Id.* at 649.

Applying *MacKinnon*, a California Court of Appeal held that "the widespread dissemination of silica dust as an incidental by-product of industrial sandblasting operations most assuredly is what is 'commonly thought of as pollution' and 'environmental pollution.'" *Garamendi v. Golden Eagle Ins. Co.*, 127 Cal. App. 4th 480, 486 (2005). The *Garamendi* court rejected the notion that there must be a showing of "wholesale environmental degradation . . . to constitute pollution." *Id.* at 486.

Yet, in *American Zurich Insurance Co. v. James N. Gray Co.*, the court found that negligent demolition work that caused silica dust to enter the air was not an activity "traditionally thought of as pollution under *MacKinnon*'s guiding principles," in part based on the court's observation that the release of silica dust was not "widespread." No. SACV131966AGJPRX, 2014 WL 11430928, at *4 (C.D. Cal. July 25, 2014). The court distinguished *Garamendi* by pointing out that "*Garamendi*'s facts reflect a situation where dust clouds from construction-related activities could be thought of as traditional pollution," and "[t]he *Garamendi* court speaks of 'the widespread dissemination of silica dust.'" *American Zurich*, 2014 WL 11430928, at *5 (quoting *Garamendi*, 127 Cal. App. 4th at 486). Unlike *Garamendi*, where the dust purportedly traveled

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

over "large distance," the *American Zurich* court "ha[d] no reason to understand the impact of the toxins released as so widespread." *American Zurich*, 2014 WL 11430928, at *5.

In *Travelers Property Casualty Co. of America v. City of Los Angeles Harbor Department*, No. CV 15-7799-GW(AJWX), 2016 WL 11520822 (C.D. Cal. Sept. 9, 2016), the court reviewed several decisions by state and federal courts applying *MacKinnon* and synthesized the relevant considerations to determine whether an injury-causing event would commonly be thought of as pollution from a layman's perspective: (1) whether the harm resulted from the by-product of an industrial operation; (2) whether the contaminant in question is regulated, and (3) whether the alleged polluter was aware of the dangers of the contaminant. *Id.* at *4. Applying those factors, the court denied the insurer's motion for summary judgment because although the creosote, the chemical at issue, was regulated by the Environmental Protection Agency, "its release due to the accidental fire . . . would . . . not comport with the common understanding of the word 'pollute.'" *Id.* at *5.

Here, Travelers relies on *Garamendi*, as well as several out-of-circuit decisions, to argue that silica is a pollutant within the meaning of the exclusion and that widespread dissemination is not required. ECF 23 at 23. Surface Warehouse responds that the "direct, localized exposures" "within indoor, confined workspaces of a fabrication shop" "cannot reasonably be characterized as traditional environmental pollution." ECF 26 at 25.

Upon consideration of the parties' arguments and the caselaw discussed above, the Court concludes whether a layperson would view the injury-causing events in the Underlying Actions as pollution is a question unsuitable for resolution in the instant Motion. As discussed above, the Underlying Plaintiffs were allegedly injured by numerous different toxic substances, including silica, various metals, and VOCs. Although the Insurers correctly point out that "widespread" dissemination is not necessary, courts have instructed that whether the dissemination of the substance was "widespread" is relevant to whether a layperson would commonly think of such dissemination as pollution. *See American Zurich*, 2014 WL 11430928, at *5. Because the Underlying Actions arise from localized exposures, this case is distinguishable from *Garamendi* for the same reasons articulated by the court in *American Zurich*, and the Court cannot definitively conclude that such exposures would "comport with the common understanding of the word 'pollute.'" *Travelers*, 2016 WL 11520822, at *5. Indeed, one court in this district recently reached the same conclusion, finding that "*Garamendi* does not settle the issue" because the Underlying Actions "could well differ on the degree of alleged dissemination they feature." *Cambria Co. LLC v. Philadelphia Indem. Ins. Co.*, 2:24-CV-01913-MEMF-MBK, 2026 WL 776300, at *11 (C.D. Cal. Mar. 17, 2026).

Drawing all reasonable inferences in Surface Warehouse's favor, the Court concludes that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|---|---|---|---|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

Surface Warehouse has demonstrated the existence of a potential for coverage—*i.e.*, the existence of injuries in the Underlying Actions that would not fall within the scope of the Pollution Exclusions. The Insurers are therefore not entitled to judgment on the pleadings.

### D.    Breach of Covenant of Good Faith and Fair Dealing

Travelers argues that Surface Warehouse's bad faith claim fails as a matter of law because Plaintiff cannot establish a breach of contract claim because coverage is barred by the Silica and Pollution Exclusions. ECF 23 at 27. Surface Warehouse agrees that its bad faith claim turns on the viability of its other contract-based claims. ECF 26 at 31.

For the reasons explained above, Court finds that Surface Warehouse's breach of contract claim survives because Travelers has not presently demonstrated the absence of potential coverage based on the Silica Exclusion or the Pollution Exclusion. Thus, because Plaintiff's breach of contract claim survives, so too does Plaintiff's bad faith claim. *Cecena v. Allstate Ins. Co.*, No. C 05-3178JF(HRL), 2007 WL 134245, at *7 (N.D. Cal. Jan. 16, 2007) ("To the extent [the underlying breach of policy] claim turns out to be viable, the [insured] likewise would have a viable claim for bad faith.").

### E.    Duty to Indemnify

"Where there is a duty to defend, there *may be* a duty to indemnify." *Certain Underwriters at Lloyd's of London v. Superior Ct.*, 24 Cal. 4th 945, 958 (2001). "The duty to indemnify arises after a judgment has been entered against the insured on a theory which is in fact, rather than merely potentially, covered by the policy." *Oruna v. Burlington Ins. Co.*, No. 222CV03425SPGGJSX, 2023 WL 5667539, at *10 (C.D. Cal. June 6, 2023) (citing *Lloyd's*, 24 Cal. 4th at 958). The Court therefore denies Travelers' Motion as unripe to the extent that it concerns its duty to indemnify Surface Warehouse.

To be clear, the Court's denial of Travelers' Motion is not a conclusive determination that coverage under the Policies has been established. Rather, the outcome reached by the Court is based upon its conclusion that, at the present stage, the injuries alleged in the Underlying Actions are potentially covered under the Policies. In any given Underlying Action, if it is determined that the plaintiff's injuries were in fact caused by substances that fall within the Silica Exclusion or Pollution Exclusion, Travelers may at that point be able to show that "no claim can in fact be covered," and the duty to defend would be extinguished. *Buss*, 16 Cal. 4th at 46.

//

//

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| Case No. | 2:25-cv-03895-MRA-MAA | Date | March 31, 2026 |
|----------|----------------------|------|----------------|
| Title | *Surface Warehouse, LP v. The Charter Oak Fire Insurance Company, et al.* | | |

## IV.    CONCLUSION

For the foregoing reasons, Travelers' Motion for Judgment on the Pleadings [23] is **DENIED**.

**IT IS SO ORDERED.**

                                                     -   :   -

                    Initials of Deputy Clerk        mku